CENTRAL GREYHOUND LINES, INC., OF NEW YORK, Appellant, *v.* CARROLL E. MEALEY et al., Constituting the State Tax Commission, Respondents.

Argued June 6, 1946; decided July 23, 1946.

*Charles A. Schoeneck* for appellant. I. If receipts from the sale of utility services for use partly within and partly outside the State are taxable under section 186-a of the Tax Law when the voyage originates and terminates in New York State, the tax must be limited to the revenue attributable to the mileage in New York State. (*Lehigh Valley Railroad* v. *Pennsylvania*, 145 U. S. 192; *U. S. Express Co.* v. *Minnesota*, 223 U. S. 335; *Hanley* v. *Kansas City Southern Ry. Co.*, 187 U. S. 617.) II. The history of section 186-a and the plain meaning of the language used show a clear legislative intent to limit the tax to utility services consumed or used in New York State and not to tax services consumed or used partly within and partly without the state. (*People ex rel. Cornell Steamboat Co.* v. *Sohmer*, 206 N. Y. 651, 235 U. S. 549; *Matter of Hamlin*, 226 N. Y. 407; *Pacific Express Co.* v. *Seibert*, 142 U. S. 339; *Converse* v. *Northern Pacific R. R. Co.*, 2 F. 2d 959; *Hoyt* v. *Commissioner of Taxes*, 23 N. Y. 224; *People ex rel. Jefferson* v. *Smith*, 88 N. Y. 576; *People ex rel. Metropolitan Playhouses, Inc.*, v. *Graves*, 251 App. Div. 655, 275 N. Y. 621; *Dun & Bradstreet, Inc.*, v. *City of New York*, 276 N. Y. 198; *Matter of Luchow, Inc.*, v. *Taylor*, 251 App. Div. 164, 275 N. Y. 536.)

*Nathaniel L. Goldstein, Attorney-General* (*John C. Crary, Jr.*, and *Wendell P. Brown* of counsel), for respondents. Appellant's receipts from sale of transportation from points in the State of New York to destinations therein are validly taxable in their entirety although a portion of the route lies outside the State, and section 186-a of the Tax Law applies to such receipts. (*People ex rel. Cornell Steamboat Co.* v. *Sohmer*, 235 U. S. 549; *Cornell Steamboat Co.* v. *United States*, 321 U. S. 635; *Maine* v. *Grand Trunk Ry. Co.*, 142 U. S. 217; *McGoldrick* v. *Berwind-White Co.*, 309 U. S. 33; *O'Kane* v. *State*, 283 N. Y. 439; *International Harvester Co.* v. *Dept. of Treasury*, 322 U. S. 340; *People ex rel. Pennsylvania R. R. Co.* v. *Wemple*, 138 N. Y. 1; *People ex rel. N. Y. C. & H. R. R. Co.* v. *Roberts*, 32 App. Div. 113, 157 N. Y. 677.)

CONWAY, J. There is presented for construction a part of section 186-a of the Tax Law. That section imposes an emergency tax of 2% upon the gross income of every utility doing business in this State which is subject to the supervision of the

State Department of Public Service and which has an annual gross income in excess of $500. The petitioner is a corporation engaged in business as a common carrier by omnibus and subject to the supervision of the Public Service Commission. It operates omnibuses both within and without the State. Subdivision 2, clause (a) provides that the word "utility" includes every person subject to the supervision of the State Department of Public Service with certain exceptions not material here. Subdivision 2, clause (b) provides that the word "person" includes corporations.

Subdivision 2, clause (c) provides: "the words 'gross income' mean and include receipts received in or by reason of any sale * * * made or service rendered for ultimate consumption or use by the purchaser in this state * * *."

The State Tax Commission included within petitioner's gross income, for the purpose of computing the emergency tax, receipts from sales of tickets for certain journeys which originated and terminated in New York State but which went through New Jersey and Pennsylvania. At the hearing before the commission, the proof was limited to figures for July, 1937, with the stipulation that the result should be applicable to all the assessments for which application for revision had been filed.

The regular route of the busses of this company traveling between New York City and cities and villages in upstate New York is through New Jersey and Pennsylvania. A passenger who wishes to go to New York City from Buffalo, for instance, buys a single ticket marked "Buffalo to New York City." The bus travels within this State from Buffalo to Elmira; en route from Elmira to Towanda, Pennsylvania, it crosses the Pennsylvania State line and continues through Pennsylvania to Scranton. En route from Scranton, it crosses the New Jersey State line and continues through New Jersey to the Holland or Manhattan Tunnel and into New York City.

Petitioner's Exhibit 7, entitled "RECEIPTS FROM INTERSTATE BUSINESS WHICH ORIGINATES AND TERMINATES IN NEW YORK STATE", breaks down the total receipts of July, 1937, for journeys originating and terminating in New York State into two figures: $84,412.31 which represents receipts for *total* mileage covered, and $48,508.97 which represents receipts for mileage covered *within* New York State. Receipts for journeys

which begin at a point in New York State and terminate at a point outside of the State, or the reverse, are not included in this controversy.

The contention of the petitioner at the hearing before the commission was that gross income to be taxed under this statute, if any, is limited to receipts representing mileage covered within New York State. The assessment of $1,688.24 made by the commission on the basis of *total* receipts for these journeys was affirmed upon the hearing. It was stipulated that the commission found that (1) 42.53% of the total mileage of such journeys was traversed without the State, and 57.47% within the State; (2) that section 186-a of the Tax Law applies to bus transportation originating and terminating in this State; (3) that section 186-a so construed violates neither the Federal nor State Constitutions; and (4) that the receipts from such transportation should not be prorated according to the mileage traversed in and out of this State.

Petitioner advances two arguments. The first is that the language of section 186-a includes within " gross income " receipts for sales made or service rendered for ultimate consumption or use by the purchaser in this State, but does not include sales made or service rendered for consumption or use partly within and partly without the State. Petitioner argues that the word " ultimate " has no reference to the point of destination in transportation and may therefore be disregarded. It explains that that word was used in order to make the tax applicable to the resale of utility services by the original purchaser of such service (for instance, submeterers), and at the same time to avoid the pyramiding of taxes which would result from taxation of both wholesale and retail sales. There seems no reason to doubt this explanation of the word " ultimate " so far as it refers to submeterers. Indeed, the *" Declaration of legislative intent "* which accompanied the amendment of section 186-a in 1941 (L. 1941, ch. 137, § 1) states: " It was intended to include persons and corporations which were directly in competition with ordinary utilities, such as, landlords and submeterers, who buy their services from other utilities and, in turn, resell such services. For that reason the tax was imposed on receipts from sales to ultimate consumers. Receipts from the sale of such utility services to submeterers were not taxed,

but receipts of submeterers from their own customers were intended to be taxed."

However, that aspect of the use of the word " ultimate " does not render it necessary to ignore the word entirely in relation to transportation. Nor do we think the Legislature intended such a result. Subdivision 1 of the section distinguishes between utilities subject to the supervision of the Department of Public Service and utilities not so subject. Submeterers and landlords are not subject to the supervision of the Department of Public Service, but they are taxable under this statute. (*Matter of Lacidem Realty Corp.* v. *Graves*, 288 N. Y. 354.) A 2% tax of its " gross income " is imposed on every utility subject to the supervision of the Department of Public Service; a 2% tax is also imposed on the " gross operating income " of " every other utility doing business in this state ". Subdivision 2, clause (c) defines " gross income " (which, as used in subdivision 1, refers only to income of utilities under the supervision of the department, to which class petitioner belongs) as including receipts for " any sale   *   *   *   made or service rendered for ultimate consumption or use   *   *   *   in this state ". Subdivision 2, clause (d) defines " gross operating income " (which, as used in subdivision 1, refers to income of those not under the supervision of the department, to which class submeterers and landlords belong) as including receipts for any " sale   *   *   *   made for ultimate consumption or use " or for " furnishing for such consumption or use   *   *   *   in this state ". Thus it appears that the word " ultimate " is used in both cases.

Petitioner also points out that section 186-a " is not the first law of this state imposing a tax upon the gross income of utilities engaged in the transportation business." It cites section 184 of the Tax Law which imposes a franchise tax on transportation and transmission corporations and associations. That statute includes within " gross earnings " " earnings from transportation or transmission business originating and terminating within this state " but excludes " earnings derived from business of an interstate character ". Petitioner argues that since section 186-a does not use the phrase " earnings from   *   *   *   business originating and terminating within this state ", section 186-a excepts this type of business from taxation.

We do not think it necessary to attempt to interpret section 186-a in the light of the language of section 184. It is not shown that the two sections are related in any way. Section 184 has been in force with frequent amendments since 1880. It imposes a franchise tax on corporations doing a particular kind of business: transportation or transmission. Section 186-a, in force since 1937, imposes an emergency tax on a great number of different utility services. We think that the language of the latter is broad enough to include the kind of business in issue here, and that it was not necessary in a statute which was made applicable to such a wide field to use the specific words used in section 184 in relation to transportation corporations.

Even aside from the use of the word " ultimate ", we do not agree with petitioner's assertion that the service it renders in this transportation is consumed or used partly within and partly without the State. The Appellate Division pointed that out clearly.

The second argument of petitioner is that, if the statute is construed to tax this kind of business, it should be construed to tax only that proportion of receipts attributable to mileage within this State. Its petition in the Supreme Court alleged that a construction of section 186-a which includes within gross income the total receipts for these trips is " contrary to statute [and] is unconstitutional ", but petitioner does not urge in its brief here that such construction is unconstitutional. It states that the primary question is not one of constitutional taxing power but of statutory construction. It relies upon *Lehigh Valley Railroad* v. *Pennsylvania* (145 U. S. 192); *United States Express Co.* v. *Minnesota* (223 U. S. 335); and *Hanley* v. *Kansas City Southern Ry. Co.* (187 U. S. 617) as indicating that the statute ought to be limited to receipts for mileage covered within this State. It should be noted here that the petitioner cites no case where the United States Supreme Court has held that a tax on transportation originating and terminating in one State but passing through another State *must be limited* to receipts for mileage covered within the State of origin and terminus. In the *Lehigh Valley* case, the State court had upheld a tax imposed on a railroad corporation, based on receipts for continuous transportation beginning and ending in Pennsylvania but passing through New Jersey. It appears

that only that portion of transportation which was within Pennsylvania was taxed. The railroad objected to the tax on the ground that the transportation was interstate commerce. The question before the Supreme Court was: " * * * simply whether, in the carriage of freight and passengers between two points in one State, the mere passage over the soil of another State renders that business foreign, which is domestic. We do not think such a view can be reasonably entertained, and are of opinion that this taxation is not open to constitutional objection by reason of the particular way in which Philadelphia was reached from Mauch Chunk."

In *State* v. *United States Express Co.* (114 Minn. 346), a tax construed as a property tax was levied against the total transportation business done by defendant within the State. The Supreme Court of Minnesota held, following the *Lehigh* case, that transportation originating and terminating in Minnesota but passing through another State was not interstate commerce. It then limited the tax, however, to the mileage within the State, saying (p. 350): " This seems to us the safer rule, and avoids any question of taxing interstate commerce * * *." When the case reached the United States Supreme Court it was affirmed (223 U. S. 335). It is not accurate to say that the Minnesota court held that the *Lehigh* case required that the tax be limited to revenue from mileage within the State, and that the Supreme Court affirmed that holding. As in the *Lehigh* case, the appellant in the Supreme Court objected to the taxation of *any* of the transportation which originated and terminated in Minnesota but passed through another State, on the ground that that kind of business was interstate commerce. The Supreme Court cited the *Lehigh* case as controlling on this issue (pp. 341–342) not on the question of whether the tax should be prorated. It does not appear that the latter question was before the court.

*Hanley* v. *Kansas City Southern Ry. Co.* (187 U. S. 617) cited by petitioner, is not applicable here, since it determined only that commerce extending from one State to a Territory may not be *regulated* by either State or Territory; it specifically distinguished the *Lehigh* case as an example of State *taxing* power.

There is no constitutional objection to taxation of the total receipts here. This is not interstate commerce (*Lehigh Valley*

case; *supra; People ex rel. Cornell Steamboat Co.* v. *Sohmer,* 235 U. S. 549; *Ewing* v. *Leavenworth,* 226 U. S. 464); and, since we think that this service is " service rendered for ultimate consumption or use by the purchaser in this state ", we see no reason why the statute should be construed to limit the tax to receipts attributable to mileage covered within this State in the course of continuous transportation between points in this State.

The order should be affirmed, with costs. [See 296 N. Y. 638.]

LOUGHRAN, Ch. J., LEWIS, DESMOND, THACHER and FULD, JJ., concur; DYE, J., taking no part.

Order affirmed.