## CENTRAL GREYHOUND LINES, INC. *v.* MEALEY ET AL.

No. 14.   Argued October 13, 1947.—Decided June 14, 1948.

*Tracy H. Ferguson* argued the cause for appellant. With him on the brief were *George H. Bond* and *Edward Schoeneck.*

*John C. Crary, Jr.,* Assistant Attorney General of New York, argued the cause for appellees. With him on the brief were *Nathaniel L. Goldstein,* Attorney General, *Wendell P. Brown,* Solicitor General, and *Irving I. Waxman,* Assistant Attorney General.

MR. JUSTICE FRANKFURTER delivered the opinion of the Court.

This is a proceeding arising out of a determination by the Tax Commission of the State of New York, sustained by the courts of the State, whereby § 186–a of the New York Tax Law was construed to impose a tax on appellant's gross receipts from transportation between points within the State but over routes that utilize the highways of Pennsylvania and New Jersey. The appellant contends, against contrary conclusions below, that since the taxed transportation was interstate commerce, New York may not constitutionally tax the gross receipts from such transportation. In any event, it submits that the State may validly tax only so much of these gross receipts as are attributable to the mileage within the State. Before dealing with these issues, we must dispose of an objection to our right to deal with them.

The State urges that the constitutional claims here pressed by the appellant were not passed upon by the New York Court of Appeals. The record does not sustain this challenge to our jurisdiction. The constitutional issues were undeniably raised before the State Tax Commission and on review before the Appellate Division of the Supreme Court, 266 App. Div. 648. The suggestion that these issues were not before the Court of Appeals is based on its statement that the question urged there was "not one of constitutional taxing power but of statutory construction." 296 N. Y. 18, 24. But the court proceeded to pass upon the constitutional issues and expressly held that "there is no constitutional objection to taxation of the total receipts here. This is not interstate commerce . . . ." 296 N. Y. at 25. Its amended remittitur stated explicitly that a question arising under the Commerce Clause of the Constitution "was presented and passed upon," and that in sustaining the tax the court "held that the aforesaid statute as so construed is not repugnant to that provision of the Federal Constitution." This amendment was not a retrospective injection of a non-existent federal question, but a formal certification that a federal claim had been presented and was adjudicated by the Court of Appeals. It is properly here for review. § 237 (a) of the Judicial Code, 28 U. S. C. § 344 (a).

This case serves to remind once more that courts do not adjudicate abstractions, such as, "What is interstate commerce?" Also, it again illustrates that even if it be found that certain transactions in fact constitute interstate commerce, such conclusion does not answer the further inquiry whether a particular assertion of power by a State over such transactions offends the Commerce Clause.

It is too late in the day to deny that transportation which leaves a State and enters another State is "Com-

merce . . . among the several States" simply because the points from and to are in the same State. *Hanley* v. *Kansas City Southern R. Co.,* 187 U. S. 617; *Western Union Tel. Co.* v. *Speight,* 254 U. S. 17; *Missouri Pacific R. Co.* v. *Stroud,* 267 U. S. 404. In reaching the opposite conclusion the State court relied upon three decisions of this Court: *Lehigh Valley R. Co.* v. *Pennsylvania,* 145 U. S. 192; *Ewing* v. *Leavenworth,* 226 U. S. 464; *New York ex rel. Cornell Steamboat Co.* v. *Sohmer,* 235 U. S. 549. The *Ewing* case was based on the *Lehigh Valley* case; the *Cornell Steamboat* case relied on the *Ewing* and the *Lehigh Valley* decisions. The holding in the *Lehigh Valley* case was defined with precision by Mr. Justice Holmes in the *Hanley* case. He accounted for some State decisions which disregarded interstate commerce as a matter of fact, tested by the actual transaction, as "made simply out of deference to conclusions drawn from *Lehigh Valley Railroad Co.* v. *Pennsylvania,* 145 U. S. 192, and we are of opinion that they carry their conclusions too far." He pointed out that in the *Lehigh Valley* case "the tax 'was determined in respect of receipts for the proportion of the transportation within the State.' 145 U. S. 201. Such a proportioned tax had been sustained in the case of commerce admitted to be interstate." *Hanley* v. *Kansas City Southern R. Co., supra,* at 621. This limited scope of the *Lehigh Valley* case was the basis of decision in *United States Express Company* v. *Minnesota,* 223 U. S. 335. In that case, the Minnesota Supreme Court had interpreted the *Lehigh Valley* decision "as allowing a recovery of taxes upon that proportion of the earnings derived from the carriage wholly within the state. This seems to us the safer rule, and avoids any question of taxing interstate commerce, and we adopt and apply it to this case. Nine per cent. of the taxes recovered on this class of earnings should be deducted from the amount

of the recovery." 114 Minn. 346, 350. On writ of error to the Supreme Court of Minnesota, this Court upheld the State court's application of the *Lehigh Valley* decision. 223 U. S. 335, 341–42.

In view, however, of some contrariety of views to which the opinion in the *Lehigh Valley* case has given rise, it calls for a more candid consideration than merely quoting phrases from it congenial to a particular decision. The *Lehigh Valley* case was this. The Lehigh Valley Railroad Company attacked the validity of a Pennsylvania statute taxing the company's gross receipts from its line between Mauch Chunk, Pennsylvania, and Phillipsburg, New Jersey. The Pennsylvania Railroad operated a connecting line between Phillipsburg and Philadelphia. The Lehigh and the Pennsylvania had arranged for continuous transportation of through passengers and freight between Mauch Chunk and Philadelphia. The trial court had found, as appears from the record, that the "total receipts from this transportation, seven per cent. of which were collected by the Lehigh Valley Railroad Company at point of shipment and the remainder by the Pennsylvania Railroad Company at point of destination, were apportioned between the companies upon a mileage basis—that is to say, each company's share was in the proportion that the number of miles carried by it bore to the total number of miles carried." It sustained the tax on the ground that the transportation was in substance "purely internal." The Supreme Court of Pennsylvania affirmed on the trial court's opinion. *Lehigh Valley R. Co.* v. *Commonwealth,* 1 Monag. 45, 17 Atl. 179.

When the case got here, the Lehigh Valley contended that the transportation between Mauch Chunk and Phillipsburg constituted interstate commerce and therefore beyond the taxing power of Pennsylvania, because Phillipsburg, while on the Delaware River border between

Pennsylvania and New Jersey, was in New Jersey and reached by the railroad via an interstate bridge. Pennsylvania, on the other hand, ignoring the stretch over the interstate bridge (apparently on the theory of *de minimis*) insisted that the gross receipts were deemed to be "wholly from traffic within the state" because so treated by the railroad itself. This was based on the fact that the Lehigh Valley and the Pennsylvania Railroad had apportioned the receipts from their through traffic, and the amount of the gross receipts which Pennsylvania taxed was the proportion which the railroads *inter se* attributed to the Lehigh Valley as its share of the earnings within Pennsylvania. This fiscal arrangement between the two railroads is the explanation and justification for the statement in this Court's opinion that "The tax under consideration here was determined in respect of receipts for the proportion of the transportation within the State." 145 U. S. at 201. And so, naturally enough, in the *Hanley* case the Court called the tax which had been sustained in the *Lehigh Valley* case "a proportioned tax," and as such it "had been sustained in the case of commerce admitted to be interstate." *Hanley* v. *Kansas City Southern R. Co., supra,* at 621.

In support of the proposition that "a proportioned tax had been sustained in the case of commerce admitted to be interstate" the *Hanley* case invoked *Maine* v. *Grand Trunk R. Co.,* 142 U. S. 217. Unfortunately, the opinion in *Lehigh Valley* did not rely on that case. It did not even mention it. This silence is explicable by the fact that only a few months before, in the same term, the Court had sharply divided on this very issue in the *Grand Trunk* case. In the *Lehigh Valley* case Mr. Chief Justice Fuller spoke for a unanimous court. One is entitled to infer that such accord was obtainable by not renewing the battle of the *Grand Trunk* case. It would not be

the first time in the history of this Court that agreement could be reached by one mode of reasoning but not by another. Mr. Justice Bradley and his fellow dissenters in the *Grand Trunk* case were evidently content to sustain the Pennsylvania tax as a tax on "domestic transportation," "internal intercourse," in short as not "interstate commerce," for thereby they would not bring into question the views so vigorously expressed by them a few months before.

It was reasonable enough to disregard the short distance in which the transportation in the *Lehigh Valley* case went over the interstate bridge on the Delaware River but otherwise was wholly in Pennsylvania, and to treat it as *de minimis* when the railroad's accounting itself treated the receipts as proportioned. "Regulation and commerce among the States both are practical rather than technical conceptions, and, naturally, their limits must be fixed by practical lines." *Galveston, Harrisburg and San Antonio R. Co.* v. *Texas*, 210 U. S. 217, 225. But to label transportation across an interstate stream "local commerce" for some purposes when it is "interstate commerce" in other relations, see, *e. g., Covington & Cincinnati Bridge Co.* v. *Kentucky*, 154 U. S. 204, is to use loosely terms having connotations of constitutional significance. To call commerce in fact interstate "local commerce" because under a given set of circumstances, as in the *Lehigh Valley* case, a particular exertion of State power is not rendered invalid by the Commerce Clause is to indulge in a fiction. Especially in the disposition of constitutional issues are legal fictions hazardous, because of the risk of confounding users and not merely readers. The kind of confusion to which the *Lehigh Valley* opinion has given rise results from employing a needless fiction—calling commerce local which in fact is interstate—as a manner of stating that a particular exercise of State power is not

invalid even though it affects interstate commerce. The difficult task of determining whether a phase of commerce, concededly interstate, is subject to a particular incidence of State regulation, through taxation or otherwise, is not lessened by calling interstate commerce local commerce in order to sustain its local control. To state this persistent and protean problem of our federalism in the form of a question-begging fiction, is not to answer it.

This brings us to the facts of the case before us. New York claims the right to tax the gross receipts from transportation which traverses New Jersey and Pennsylvania as well as New York. To say that this commerce is confined to New York is to indulge in pure fiction. To do so, does not eliminate the relation of Pennsylvania and New Jersey to the transactions nor eliminate the benefits which those two States confer upon the portions of the transportation within their borders. Neither their interests nor their responsibilities are evaporated by the verbal device of attributing the entire transportation to New York. There is no suggestion here that the interstate routes were utilized as a means of avoiding even in part New York's taxation. Compare, *e. g., Eichholz* v. *Public Service Commission of Missouri,* 306 U. S. 268, and *Ryan* v. *Pennsylvania Public Utility Commission,* 143 Pa. Super. 517. We are not dealing with a necessary deviation or a calculated detour. Nor is New York seeking to tax transactions physically outside its borders but so trifling in quantity to the New York commerce, of which they form a part, as to be constitutionally insignificant. New York seeks to tax the total receipts from transportation of which nearly 43% of the mileage lay in New Jersey and Pennsylvania. Transactions which to such a substantial extent actually take place in New Jersey and Pennsylvania cannot be deemed legally to take place in New York.

Of course we are dealing here with "interstate commerce." Of course Congress did not exceed its power to regulate such commerce when in the Motor Carrier Act of 1935 it explicitly included commerce such as that before us within the scope of that Act: "The term 'interstate commerce' means commerce between any place in a State and any place in another State or between places in the same State through another State, whether such commerce moves wholly by motor vehicle or partly by motor vehicle and partly by rail, express, or water." 49 Stat. 543, 544, 49 U. S. C. § 303 (a) (10). In a case like this nothing is gained, and clarity is lost, by not starting with recognition of the fact that it is interstate commerce which the State is seeking to reach and candidly facing the real question whether what the State is exacting is a constitutionally fair demand by the State for that aspect of the interstate commerce to which the State bears a special relation. See *Union Brokerage Co.* v. *Jensen,* 322 U. S. 202, and *Bob-Lo Excursion Co.* v. *Michigan,* 333 U. S. 28. Such being the real issue inevitably "nice distinctions are to be expected." *Galveston, Harrisburg and San Antonio R. Co.* v. *Texas, supra,* at 225. But such distinctions would be clearer and more reasonably made if, for instance, a flat privilege tax applied by a municipality to an express company shipping packages between points within a State, but over routes which for a very short distance pass out of the State, had been frankly sustained on the ground that the tax did not burden interstate commerce in the constitutional sense rather than on the ground that it was not interstate commerce. Compare *Ewing* v. *Leavenworth, supra,* with *Kirmeyer* v. *Kansas,* 236 U. S. 568. Again, it would have made for a less dialectical, if not more coherent, development of the law to sustain a New York gross receipts tax on a New York corporation, engaged in towing vessels between ports in

the State of New York on the Hudson River traversing the New Jersey side but not touching its shore, on the ground that upon the facts of that case, and more particularly New Jersey's relation to the transactions (very different from those now before us), New York was not burdening interstate commerce, rather than to hold that "transportation between the ports of the State is not interstate commerce, excluded from the taxing power of the State, because as to a part of the journey the course is over the territory of another State." Compare *New York ex rel. Cornell Steamboat Co. v. Sohmer, supra,* at 560, with *Cornell Steamboat Co. v. United States,* 321 U. S. 634.

It is significant that, so far as we are advised, no State other than New York seeks to tax the unapportioned receipts from transportation going through more than one State, (except to an extent so insignificant as to be disregarded), merely because such transportation returns to the State of its origin. If New Jersey and Pennsylvania could claim their right to make appropriately apportioned claims against that substantial part of the business of appellant to which they afford protection, we do not see how on principle and in precedent such a claim could be denied. This being so, to allow New York to impose a tax on the gross receipts for the entire mileage—on the 57.47% within New York as well as the 42.53% without—would subject interstate commerce to the unfair burden of being taxed as to portions of its revenue by States which give protection to those portions, as well as to a State which does not. This is not to conjure up remote possibilities. Pennsylvania's claim to tax a portion of appellant's gross receipts from the transportation which New York has taxed is not a matter of speculation. Apparently, Pennsylvania has so taxed since 1931. Penn. Laws 1931, No. 255, as amended by Act of June 5, 1947,

No. 204. New York does not deny that Pennsylvania in fact so taxes, though there is dispute as to the meaning of the formula by which she does so. But even if neither Pennsylvania nor New Jersey sought to tax their proportionate share of the revenue from this transportation, such abstention would not justify the taxing by New York of the entire revenue. *Freeman* v. *Hewit,* 329 U. S. 249, 256. By its very nature an unapportioned gross receipts tax makes interstate transportation bear more than "a fair share of the cost of the local government whose protection it enjoys." *Id.* at 253. The vice of such a tax is that it lays "a direct burden upon every transaction in [interstate] commerce by withholding, for the use of the State, a part of every dollar received in such transactions." *Crew Levick Co.* v. *Pennsylvania,* 245 U. S. 292, 297; see *Adams Manufacturing Co.* v. *Storen,* 304 U. S. 307, 311; *Freeman* v. *Hewit, supra; Joseph* v. *Carter and Weekes Stevedoring Co.,* 330 U. S. 422.

However, while the New York courts have construed the statute as levying an unapportioned gross receipts tax on this transaction, the entire tax need not fall. The tax may be "fairly apportioned" to the "business done within the state by a fair method of apportionment." *Western Live Stock* v. *Bureau of Revenue,* 303 U. S. 250, 255. There is no dispute as to feasibility in apportioning this tax. On the record before us the tax may constitutionally be sustained on the receipts from the transportation apportioned as to the mileage within the State. See *Ratterman* v. *Western Union Telegraph Co.,* 127 U. S. 411, 427–28. There is no question as to the fairness of the suggested method of apportionment. Compare *Maine* v. *Grand Trunk R. Co., supra,* with *New Jersey Bell Telephone Co.* v. *State Board of Taxes and Assessments,* 280 U. S. 338; cf. *Wallace* v. *Hines,* 253 U. S. 66. Both appellant and appellee have indicated here

that, as a matter of construction, the statute under consideration permits such apportionment, but that is a matter for the New York courts to determine.

The judgment is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

Mr. Justice Rutledge concurs in the result.

Mr. Justice Murphy, with whom Mr. Justice Black and Mr. Justice Douglas concur, dissenting.

A precise delineation of the controlling facts is essential to a determination of the constitutional issue involved in this appeal. That issue concerns an alleged conflict between the commerce clause of the Constitution of the United States and a New York statute taxing the gross income of utilities doing business within that state. Specifically, the problem relates to an application of the tax to the gross receipts from bus transportation originating and terminating in New York but passing through parts of New Jersey and Pennsylvania.

Section 186–a of the New York Tax Law is entitled "Emergency tax on the furnishing of utility services." It imposes a tax "equal to two per centum of its gross income . . . upon every utility doing business in this state . . . in addition to any and all other taxes and fees imposed by any other provision of law for the same period."[1] The word "utility" is defined to include every person "subject to the supervision of either division of the state department of public service"[2] and the words "gross income" are defined to include "receipts received in or by reason of any sale . . . made or service rendered for ultimate consumption or use by the purchaser in this state . . . ."[3]

---

[1] New York Tax Law, § 186–a, subd. 1.

[2] New York Tax Law, § 186–a, subd. 2 (a).

[3] New York Tax Law, § 186–a, subd. 2 (c).

Appellant is a New York corporation engaged in business as a common carrier by omnibus. It operates its buses both within and without New York and is subject to the supervision of the New York Public Service Commission. Hence it is a utility within the meaning of § 186–a.

Appellant operates buses over numerous routes from New York City to Buffalo and other cities in upstate New York, routes which cut across sections of New Jersey and Pennsylvania and which are the most direct ones possible. The controversy is concerned only with the taxation under § 186–a of that part of appellant's receipts derived from continuous transportation of passengers between New York points over such routes. Application of the tax to the receipts from transportation moving solely within New York is not contested; and receipts from transportation between New York points and out-of-state points have not been taxed.

At the hearing before the State Tax Commission relative to the contested tax, the parties agreed that the evidence would be limited to the operations over these routes during July, 1937, and that the conclusions to be drawn from such evidence would be applicable to all months subsequent thereto. The evidence which was introduced revealed that 57.47% of the total mileage of the journeys over the routes in question was traversed within New York, while 42.53% thereof was traversed within New Jersey and Pennsylvania. Although some transfers and stopovers in New Jersey and Pennsylvania were indicated, there was no showing that they were of a substantial number or that they were of such a nature as to break the transportation between New York points into two unrelated trips. The legal issues in the case have been predicated at all times upon the evidence that there was continuous transportation of passengers between New York points on single tickets and upon the evidence

as to the percentage of the mileage traversed within and without New York.

The State Tax Commission construed § 186–a as applicable to appellant's total receipts from the transportation in issue, proration of the receipts in accordance with the mileage traversed in New York being considered unnecessary. So construed, § 186–a was held not to conflict with the commerce clause of the Federal Constitution. This ruling was sustained by the New York courts.

The crucial fact, from the constitutional standpoint, is the dual and unique character of transportation between termini in the same state where the territory of another state is traversed en route. Such transportation has both interstate and intrastate features. From the standpoint of physical movement, there is a crossing of state lines and a journey over territory belonging to more states than one—a movement that is undeniably interstate. At the same time, however, the business of transporting passengers or freight between points in the same state is essentially local in character despite the interstate movement. All of the essential elements of the commercial intercourse represented by the continuous transportation are resident in that one state. The parties to the transportation contract, the making of the contract and the service which is the subject of the contract are identified preeminently with that state. The whole purpose of the transaction is to transport the passengers or freight to a point within the same state as the point of origin. Passage through another state is a mere geographic incident in the consummation of this local transaction. While that passage may have interstate significance for other purposes, it cannot operate by itself to make interstate the commercial relationship underlying the continuous transportation.

And so within the narrow compass of this particular type of transportation it is something more than a fiction

to say that both interstate and intrastate features are present. Cf. *Bob-Lo Excursion Co.* v. *Michigan,* 333 U. S. 28. It is a recognition of the hard realities of the situation. It is a realization that transporting persons between points in the same state is a business local in all its commercial connotations, even though there is a physical movement of an interstate character. Due respect for Mr. Justice Holmes' admonition that commerce among the states is a practical rather than a technical legal conception, *Swift & Co.* v. *United States,* 196 U. S. 375, 398, forbids an indiscriminate application of the interstate label simply because state lines are crossed in the course of a particular business. Where local elements remain intact despite the interstate movement it is of the essence of practicality to give recognition to that fact. Such is the situation in this case.

This Court has long recognized that this type of transportation, unlike other types, is physically interstate and commercially local. And it has given life to that distinction so that the federal power over interstate commerce might remain effective without detracting unnecessarily from the scope of state power over those engaged in this narrow transportation sphere. Where the proposed state action is such as to create an actual or potential conflict with the federal authority arising out of the physical movement across state lines, the Court has emphasized the interstate aspect of the transportation in making the federal power supreme. Thus in *Hanley* v. *Kansas City Southern R. Co.,* 187 U. S. 617, Congress was found to have the sole power to fix the rates for transportation of freight by rail between two points in Arkansas over a route passing through a part of the Indian Territory; Arkansas was accordingly precluded from the exercise of its rate-making authority in this instance. Such transportation was said to be interstate, stress being laid upon the physical movement of the freight across and beyond the Arkansas border.

See also *Missouri Pacific R. Co.* v. *Stroud,* 267 U. S. 404; *Western Union Tel. Co.* v. *Speight,* 254 U. S. 17; compare *Wilmington Transportation Co.* v. *Railroad Commission,* 236 U. S. 151.

But where the impact of state action is such as not to endanger or embarrass federal control over interstate movements, the Court has relied upon the local elements of the transportation in sanctioning the imposition of state authority. This has occurred in the setting of state gross receipts taxes and city license taxes levied on those engaged in the type of transportation here involved. *Lehigh Valley R. Co.* v. *Pennsylvania,* 145 U. S. 192; *United States Express Co.* v. *Minnesota,* 223 U. S. 335; *Ewing* v. *Leavenworth,* 226 U. S. 464; *Cornell Steamboat Co.* v. *Sohmer,* 235 U. S. 549. In those cases the taxes were non-discriminatory in nature and interfered in no way with any regulations Congress might wish to impose by reason of the movements across state lines. The thrust of the taxes affected only the business of transporting articles between two points in the same state and the receipts derived therefrom. That business was considered to be of a local variety and a clear rejection was made of the contention that "the mere passage over the soil of another State renders that business foreign, which is domestic." *Lehigh Valley R. Co.* v. *Pennsylvania, supra,* 202. As stated in *Cornell Steamboat Co.* v. *Sohmer, supra,* 560, "But transportation between the ports of the State is not interstate commerce, excluded from the taxing power of the State, because as to a part of the journey the course is over the territory of another State."

Room has thus been made in our federal system for a reasonable accommodation of the federal and state interests in regulating and taxing those engaged in this unique transportation. See *Cornell Steamboat Co.* v. *United States,* 321 U. S. 634, 639, note 4. It is an accommodation

designed to protect the national interest in uniform regulation of interstate movements as well as to safeguard the states' legitimate interest in placing a fair share of the local burdens on those doing local business.[4]

The proper answer to the issue in this case is dictated in large part by the *Lehigh Valley* line of decisions. Those prior cases are not to be dismissed as dialectical exercises in the law of interstate commerce. They represent a realistic appreciation of the fact that the business from which the gross receipts in issue were derived is local in nature. And § 186–a of the New York Tax Law, in taxing those gross receipts, is consistent with the commerce clause of the Federal Constitution. This tax is grounded on a base different from that which justifies the exercise of federal power, making a conflict between federal and state authority impossible. In effect, § 186–a levies a non-discriminatory tax on all companies furnishing continuous transportation service between cities in that state. The tax is in terms of a percentage of the gross receipts from that service. Engaging in such transportation service is a local business, even though some of the routes cross parts of other states. And taxing the gross receipts from this service is well within

---

[4] Section 303 (10) of Part II of the Interstate Commerce Act, 49 U. S. C. § 303 (10), defines interstate commerce, for federal regulatory purposes, to include commerce "between places in the same State through another State." But § 302 (b) of the same Act, 49 U. S. C. § 302 (b), states that nothing therein "shall be construed to affect the powers of taxation of the several States." This is a Congressional recognition of the accommodation that exists in regard to the federal and state interests.

See, in general, Kauper, "State Regulation of Interstate Motor Carriers," 31 Mich. L. Rev. 1097, 1105–1107; Tarnay, "Methods for Differentiating Interstate Transportation from Intrastate Transportation," 6 Geo. Wash. L. Rev. 553, 633–637; Ganit, The Commerce Clause of the United States Constitution, § 62 (d), (1932).

the constitutional power of New York so far as the commerce clause is concerned.[5]

In light of the past decisions of this Court, the only novel question here presented is whether New York must limit its tax to that proportion of the receipts which corresponds to the proportion of the mileage traversed within that state on the trips in issue, *i. e.* 57.47%. *Lehigh Valley R. Co.* v. *Pennsylvania, supra,* and *United States Express Co.* v. *Minnesota, supra,* did not involve this question since the gross receipts taxes had there been prorated by the respective states before reaching this Court, and *Ewing* v. *Leavenworth, supra,* was concerned only with a flat license tax. While *Cornell Steamboat Co.* v. *Sohmer, supra,* did involve an unapportioned gross receipts tax, the facts were such as to make it impossible to determine what proportion of the journeys took place outside New York; the precise issue was thus unresolved.

The rule requiring apportionment of gross receipts taxes to the activities carried on within a state is one that is necessarily predicated upon the existence of some interstate activities which the commerce clause places beyond the taxing power of the state. See *Ratterman* v. *Western Union Tel. Co.,* 127 U. S. 411; *Wisconsin & M. R. Co.* v. *Powers,* 191 U. S. 379. It is designed to prevent the levying of such taxes as will discriminate against or prohibit the interstate activities or will place the interstate commerce at a disadvantage relative to local commerce. But

---

[5] The proper result in this case is aptly paraphrased in *Lehigh Valley R. Co.* v. *Pennsylvania,* 145 U. S. 192, 201–202: "So as to the traffic of the Erie Railway between the cities of New York and Buffalo, we do not understand that that company escapes taxation in respect of that part of its business because some miles of its road are in Pennsylvania, while the New York Central is taxed as to its business between the same places, because its rails are wholly within the State of New York."

this rule obviously is inapplicable where the tax is not levied on what is appropriately labelled interstate commerce. And as we have seen, New York here has levied a tax solely upon the local business of transporting passengers between points in that state, which constitutes the furnishing of utilities within the meaning of the New York Tax Law. The fact that 42.53% of the transportation occurs outside New York does not make that business any less local. From the commercial standpoint, the out-of-state segment of the journey retains its position as an integral part of the continuous local transaction. The proportion of the transportation actually taking place within or without New York thus has no commerce clause significance under these circumstances. Inasmuch as the restrictive force of the commerce clause is non-effective, New York is entitled to tax the total gross receipts from this local commerce.

This result does not permit other states, within the framework of the commerce clause, to tax the local business of transporting passengers between New York points. What is local business as to New York is not local business as to New Jersey or Pennsylvania. The elements which justify New York's unapportioned tax exist only in that state. If New Jersey or Pennsylvania were to tax a portion of appellant's gross receipts from the transportation in issue, such tax would involve quite different constitutional considerations than those which sustain the New York tax. Since New Jersey and Pennsylvania would have an interest in the situation because of the physical movements occurring within their borders, concentration would have to be placed upon the interstate aspect of the transportation. The problem would then be whether these states could constitutionally tax the portion of the gross receipts derived from the mileage traversed therein. If such taxes were sustained, the resulting multiple burden on the gross receipts would sim-

ply be a natural consequence of conducting a local business in such a manner as to use the facilities of more states than one. But that type of multiple burden is not outlawed by the commerce clause. Nor does the possibility of such a burden make the business of transporting persons between points in New York any less local in nature.

I would therefore affirm the judgment below.