Fulo, J.
This case concerns the tax liability of Public Service Interstate Transportation Company, an interstate omnibus carrier, under section 186-a of the Tax Law, as amended by chapter 601 of the Laws of 1951, for the period from July 1 through November 30, 1951. The company, to whose rights and obligations the petitioner has succeeded through merger, *180 was a New Jersey corporation engaged in the transportation of passengers by omnibus and had no routes in this State except as part of an interstate carriage.
Following the Tax Commission’s demand for taxes and penalties assertedly due under section 186-a, Public Service paid a sum in excess of $7,100 and then sought a refund on the ground that the taxes were unconstitutionally exacted since it was engaged exclusively in interstate commerce. The argument revolves about the question whether the tax is one for the use and maintenance of the State’s highways, in which case it would be valid, or whether it is a tax on the privilege of doing business, having no relationship to the use of the highways, in which event (it is said) it would be unconstitutional. The commission decided against the company and, in this article 78 proceeding, brought to review the commission’s determination, the Appellate Division agreed with the commission and confirmed its determination. The appeal to this court has been taken as of right on constitutional grounds, it being asserted that the tax imposed violates the commerce clause of the United States Constitution (art. I, § 8).
The tax was imposed, as already indicated, by virtue of section 186-a of the Tax Law, as amended by chapter 601 of the Laws of 1951, but, since Public Service urges that the predecessor provisions of this enactment must be considered in determining the issue raised, we devote a few words to its history.
In 1933, in order to aid the City of New York in meeting the relief problems created by widespread unemployment, the Legislature authorized the city to impose, for one year, “ any tax which the legislature would have power and authority to impose ” (L. 1933, ch. 815). Thereupon, by Local Law No. 19 of that same year, the city imposed a tax of 1%% upon the receipts of all utilities subject to State regulation—that is, subject to supervision by the Public Service Commission or the Transit Commission—and operating within the city. The tax was said (in the Act, § 3) to be “for the privilege of exercising its corporate franchise, or of holding property, or of doing business in the city”. (New York Steam Corp. v. City of New York, 268 N. Y. 137, 146.) The enabling power was renewed from time to time and the city not only reimposed *181 the utility tax, but also imposed other taxes, notably a sales tax. In 1937, the Legislature, concluding that relief was a State-wide problem requiring new sources of revenue, determined to impose a utility tax of 2% payable to the State and to permit all cities within the State to impose a similar tax not to exceed 1%. The first was done by adding section 186-a to the Tax Law and the second, by adding section 20-b to the General City Law (L. 1937, ch. 321). The law granting such taxing power to New York City was amended so as to limit its power to impose a utility tax to conform to the general scheme (L. 1937, ch. 327). Although the 1937 tax was also designated as a temporary emergency measure, it too was renewed from year to year and in 1947 it was made permanent (L. 1947, ch. 89).
During all this period, omnibus carriers not subject to the supervision of the Department of Public Service, that is, carriers engaged in interstate service, were not included among those taxed. The present tax was imposed in 1951 (L. 1951, eh. 601), by amending (1) the definition of “utility,” so as to include “ every person * * * engaged in the business of operating one or more omnibuses having a seating capacity of more than seven passengers ” and (2) the definition of “gross operating income,” so as to include “receipts from all transportation, whether originating, terminating or traversing this state * * * allocated on the basis of mileage within and without this state ”.
Our guide must, of course, be the decisions of the Supreme Court of the United States, for in this field they are determinative. It is settled by such decisions that a nondiscriminatory gross receipts tax on an interstate enterprise may be sustained ‘ ‘ if fairly apportioned to the business done within the taxing state * * * and not reaching any activities carried on beyond the borders of the state.” (Canton R. Co. v. Rogan, 340 U. S. 511, 515.) More specifically, where interstate transportation is concerned, ‘ ‘ an apportionment according to the mileage within the [taxing] state is an approved method. Greyhound Lines v. Medley, 334 U. S. 653, 663.” (Canton R. Co. v. Rogan, 340 U. S. 511, 516, supra; see, also, Railway Express Agency v. Virginia, 358 U. S. 434, 448, per Brennan, J., concurring.) Greyhound Lines v. Medley (334 U. S. 653, cited in *182 the Canton R. Co. case), also arose out of section 186-a. The taxpayer was a New York corporation and, operating routes which brought it under the supervision of the Public Service Commission, it was subject to the tax imposed by section 186-a even before the 1951 amendment. However, the taxpayer claimed that the tax base could not properly include receipts from a route which, although originating and terminating in New York, had 43% of its mileage in New Jersey and Pennsylvania. Both the Appellate Division and this court concluded that the tax was valid and that the entire receipts might be included in computing the tax (296 N. Y. 18, affg. 266 App. Div. 648). The Supreme Court, however, reversed that decision, holding that such receipts were the product of interstate commerce and, therefore, within the protection of the commerce clause. In so doing, though, the court did not strike those receipts from the tax base; instead, it held that “the entire tax need not fall.” Deciding that the tax could be upheld if the receipts realized from the transportation were apportioned on a mileage basis, the court stated (334 U. S., at p. 663): “ The tax may be ‘ fairly apportioned ’ to the ‘ business done within the state by a fair method of apportionment. ’ Western Live Stock v. Bureau of Revenue, 303 U. S. 250, 255. There is no dispute as to feasibility in apportioning this tax. On the record before us the tax may constitutionally be sustained on the receipts from the transportation apportioned as to the mileage within the State. See Ratterman v. Western Union Telegraph Co., 127 U. S. 411, 427-28. There is no question as to the fairness of the suggested method of apportionment. ’ ’
Public Service, pointing to the court’s observation in Spector Motor Service v. O’Connor (340 U. S. 602, 608) that “the question whether a state may validly make interstate commerce pay its way depends first of all upon the constitutional channel through which it attempts to do so ’ ’, contends that the present tax is imposed for the privilege of doing business in New York, a forbidden channel. This characterization of the tax, that it is for the privilege of doing business in the State, is unquestionably the petitioner’s and not New York’s. Neither in the *183 title of chapter 601 of the Laws of 1951, which imposed the tax, nor in the body of the enactment is there any mention of privilege or any similar operative incident, and the legislative history makes plain that no such design was present. The State Tax Commission, which drafted the amendment, supported it on the ground that omnibuses were exempt from the highway use tax under article 21 of the Tax Law and that omnibuses engaged in interstate commerce should pay part of the cost of maintaining the highways. (See N. Y. Legis. Annual, 1951, pp. 291, 296-297.) “ Since interstate omnibuses use the highways of this State, in part, on interstate journey which originates, terminates or traverses this state, it is proper ’ ’, it was said in the report recommending the enactment, “ that they pay a part of the expense of the constructing, maintaining and policing of the highways just as trucks do. This bill is designed to conform [to] the truck mileage tax imposed by Article 21, as added by Chapter 74 of the Laws of 1951. Article 21 imposes no tax on omnibuses on the theory that they are sufficiently taxed under said section 186-a. This bill, therefore, will place all omnibus receipts under section 186-a.”
Since, as the Appellate Division pertinently noted, the highway use tax was enacted in 1951, and domestic bus companies were already taxed under section 186-a, “ it was entirely consistent to exempt all omnibuses from the coverage of article 21 [imposing the truck mileage tax] and to amend section 186-a so that all omnibus carriers were covered.” The purpose of the amendment, it is quite clear, was to have all bus carriers, interstate as well as domestic, pay their share for the use of the State highways.
The petitioner’s argument, in effect, concedes that, if the 1951 tax had resulted from a separate enactment, it would have been subject to no constitutional infirmity. However, it urges that, by virtue of its incorporation in section 186-a, the omnibus tax necessarily acquired the characteristics of that section and that, since the section has been recognized as prescribing a privilege tax, the omnibus tax must likewise be so regarded. Neither phase of the argument is convincing.
*184 Although incorporated for convenience into section 186-a, the purpose of the omnibus tax was to require interstate carriers to make some contribution to the maintenance of the highways which they are using. It requires no detailed discussion to establish that a tax for such a purpose is constitutionally permissible (see, e.g., Maine v. Grand Trunk Ry. Co., 142 U. S. 217, 228; National Leather Co. v. Massachusetts, 277 U. S. 413, 423; Canton R. Co. v. Rogan, 340 U. S. 511, 515-516, supra; Northwestern Cement Co. v. Minnesota, 358 U. S. 450, 462-463) and such purpose is not tainted by the novel suggestion, which has been advanced, of guilt by association. Rather, the imposition of this tax in the same section under which domestic carriers are taxed demonstrates the absence of any intention to discriminate against interstate commerce. Manifestly, characterization of the taxes imposed by section 186-a, other than the one with which we are now concerned, is of no moment or consequence where interstate commerce is not involved. At any rate, the characterization would necessarily have to come after the event, for the Legislature supplied no label. It is true that New York City, as it was free to do under the broad legislative authority granted, designated its original utility tax, among other things, as one for the privilege of doing business in New York. At that time, however, as already indicated, the section applied only to domestic corporations and nothing turned upon its being termed a privilege tax. And, beyond this, when the Legislature imposed its own utility tax in 1937, it did not adopt this label, nor did it otherwise follow the language of the local enactment. So far as interstate commerce is concerned, the court in the Greyhound case (334 U. S. 653, supra), evidently brushed aside the suggestion that the tax there imposed might be justified as a privilege tax on a domestic corporation, for the majority opinion does not even mention the company’s state of incorporation.
However, to support its argument that the tax is not one related to the use of the highways, the petitioner points to the last phrase in clause (a) of subdivision 2 of section 186-a, as amended by chapter 601 of the Laws of 1951, reading ‘1 regardless * * * of whether use is made of the public streets ”. The phrase was added by a 1941 amendment to section 186-a (L. 1941, ch. 137) and, as the declaration of legislative intent *185 contained in that act clearly established (§ 1), it relates only to those persons selling or furnishing utility services of a peculiarly local character, such as ‘ ‘ gas, electricity, steam, water * * * telephone or telegraph service, by means of mains, pipes or wires ” (§ 186-a, subd. 2, cl. [a]). The words relied upon by the petitioners have no application whatsoever to interstate carriers, and, in the very nature of things, they could not since the tax upon such carriers is expressly “ allocated on the basis of mileage within and without this state ”. Consequently, if there were no use of the public streets, there would be no tax.
In view of the fact that the controversy before us involves a tax solely for the year 1951, no purpose is to be served by considering later amendments to section 186-a, to which the petitioner has called our attention. It is enough to say that the 1951 amendment to section 186-a imposes an appropriate tax on interstate omnibus carriers to compensate New York for their use of its highways; it does not levy a tax upon them for the privilege of continuing to engage in business. No basis exists for the claim that the tax is either by design or in its operation repugnant to the commerce clause of the Federal Constitution.
The order appealed from should be affirmed, with costs.
Chief Judge C'onway and Judges Desmond, Dye, Froessel, Van Voorhxs and Burke concur.
Order affirmed.