**In re STL TRANSPORT, INC., Debtor.**

**Bankruptcy No. 85–20201.**

United States Bankruptcy Court,
W.D. New York.

July 15, 1986.

Robert Abrams, N.Y. State Atty. Gen., Albany, N.Y., by Reynolds E. Hahn, Rochester, N.Y., for Dept. of Taxation & Finance.

Lacy, Katzen, Ryen & Mittleman by David D. MacKnight, Rochester, N.Y., for debtor.

MEMORANDUM AND DECISION

EDWARD D. HAYES, Bankruptcy Judge.

The debtor, STL Transport, Inc., has brought a motion objecting to a proof of claim filed by the New York State Department of Taxation and Finance. The claim was filed by the Department after it had conducted an audit of the debtor and after subsequent discovery by both parties. The

1. N.Y. Tax Law § 1105 (Consol.1984).

basis of the claim in question is a tax assessment against the debtor for a failure to pay sales[1] or use[2] taxes upon certain vehicles.

The facts leading up to the filing of the tax assessment are not in dispute and have been stipulated to. Within the stipulation, agreements were reached between the parties with regard to several vehicles and the amounts owing to the Department by the debtor because of those vehicles.

The remaining portion of the disputed claim involves other vehicles which may be classified into three categories. The first category includes all those tractors and trailers of the debtor which were delivered to the debtor outside of New York and were brought into New York while engaged in interstate commerce. The vehicles in this category have been used since entering New York either in the shipping of goods to other states or in the shipping of goods between Newark, New York to Westchester County or New York City and the reverse. The latter shipments were made via Pennsylvania and New Jersey under the authority of a permit granted to the debtor by the Interstate Commerce Commission. (Stipulation at 9, 11, 19 and 24). The second category consists of one tractor which was initially delivered and used within Massachusetts and was brought into New York while engaged in interstate commerce. Since the time the tractor entered New York, it has been used exclusively at the debtor's terminal or for making short runs to a lot near a thruway exit for the switching of trailers which belong within the first category. (Stipulation at 23). The third category consists of several vehicles that were transferred to the debtor from L & R Equipment, Inc. in July, 1980. (Stipulation at 12).

The Department seeks to impose a sales tax or a use tax upon the debtor for those vehicles within the first category. The imposition of a sales tax is totally inappropriate. A sales tax is a destination tax and is imposed where delivery is tak-

2. N.Y.Tax Law § 1110 (Consol.1984).

en.[3] All of the vehicles within the first category were delivered to the debtor outside the state of New York and are therefore beyond the taxing authority of the Department.

The imposition of a use tax upon the debtor for the vehicles within the first category by the Department must also be denied. In order for the Department to assess a tax upon interstate commerce, the Department must show that there has been a "taxable moment" when the interstate transit has come to rest. (*See, Southern Pacific Co. v. Gallagher*, 306 U.S. 167, 177, 59 S.Ct. 389, 393, 83 L.Ed. 586 (1939); *Inter. Telephone and Telegraph Corp. v. State Tax Comm.*, 70 A.D.2d 700, 416 N.Y. S.2d 387 (3rd Dept.1979). The Department has failed to prove that such a "taxable moment" ever took place. The Stipulation at 11 and 23 refers to all those vehicles in the first category which are involved in the shipment of goods between Newark, New York and Westchester County or New York City via Pennsylvania and New Jersey or the reverse. There is no allegation that those vehicles in the first category were involved in any activity other than in the carriage of goods over the previously enunciated route.

Rather than trying to prove that a "taxable moment" has occurred, the Department does attempt to attack the validity of whether the vehicles were involved in something other than interstate commerce. Reliance is placed by the Department on 20 N.Y.C.R.R. § 528.9(a)(5) which states:

> 528.9 Commercial vessels. [Tax Law, § 1115(a)(8) ] (a) Definitions. As used in this section, the following terms shall mean:
>
> (5) Engaged in interstate or foreign commerce. Engaged in interstate or foreign

commerce means the transportation of person or property for compensation between states or countries.

A liberal reading of the Department's cited authority indicates that the definition is limited to use solely within that immediate section. Also, when the Department's cited authority is read in conjunction with 20 N.Y.C.R.R. § 528.9(a)(1) and (2),[4] it is apparent that the authority should refer to only that type of commerce which is engaged in by a floating craft. Rather than rely upon the Department's limited definition, this Court is in agreement with the United States Supreme Court when it stated that, "[i]t is too late in the day to deny that transportation which leaves a State and enters another State is 'Commerce ... among the several States' simply because the points from and to are in the same State." *Central Greyhound Lines, Inc. v. Mealy*, 334 U.S. 653, 655–56, 68 S.Ct. 1260, 1262, 92 L.Ed. 1633 (1948).

The second category which the Department has assessed a claim against the debtor is composed of the one tractor which performs switching functions. Because there is no proof that the second category tractor is engaged in any activity other than the continuation of interstate commerce, as described in the previous paragraph, the Department's claim against that vehicle is denied.

The third category is made up of those vehicles which were transferred to the debtor by L & R Equipment, Inc. The Department seeks to treat the transfer of the vehicles as a sale. The debtor, on the other hand, seeks to have the transfer excluded under N.Y. Tax Law § 1101(b)(4)(iii)(B). The pertinent portion of that statute exempts from the definition

---

**3.** 20 N.Y.C.R.R. § 525.2(a)(3)

The sales tax is a "destination tax," that is, the point of delivery or point at which possession is transferred by the vendor to the purchaser or designee controls both the tax incident and the tax rate.

**4.** 528.9 Commercial vessels. [Tax Law, § 1115(a)(8) ] (a) Definitions. As used in this section, the following terms shall mean:

(1) Commercial vessels. A commercial vessel is any vessel primarily engaged in interstate or foreign commerce. Marine cargo containers which are constructed for "containerships" are deemed to be an integral part of such vessel. (2) Vessel. A vessel is any type of floating craft used as a means of transportation on water.

of retail sales a distribution of property by a corporation to its stockholders as a liquidating dividend.

The facts leading up to the transfer of the vehicles from L & R Equipment, Inc. to the debtor are as follows. L & R Equipment, Inc. was incorporated in 1976 for the sole purpose of owning trailers which the debtor would use and maintain. (Stipulation at 15). The original owners of L & R Enterprises, Inc. were Louis G. Johnson and Roger L. Johnson, Sr. (Stipulation at 14). In 1979, Louis G. Johnson sold his one-half interest in L & R Equipment, Inc. equally to Roger L. Johnson, Sr. and Leroy Folwell. (Stipulation at 16). In April, 1980, the debtor purchased Mr. Folwell's stock in L & R Equipment, Inc. and Roger L. Johnson, Sr. simultaneously transferred ownership in that entity to the debtor. (Stipulation at 18). The trailers originally owned by L & R Equipment, Inc. were transferred to the debtor in July, 1980 at a time when the debtor owned all of the stock of the transferor. (Exhibit 5). L & R Equipment, Inc. officially filed its Certificate of Dissolution in September, 1981. (Exhibit 8).

The aforementioned facts track the requirements of N.Y. Tax Law § 1101(b)(4)(iii)(B) for an exemption from a retail sale. The debtor was the sole shareholder of L & R Equipment, Inc. when all of the corporation's assets were transferred to the debtor. This for all intents and purposes ended the life of L & R Equipment, Inc. and that was the intention of all parties concerned. (Exhibit 9). As stipulated to by the Department and the debtor, the sole purpose of L & R Equipment, Inc. was to own trailers which the debtor would use and maintain. Once the trailers were transferred to the debtor and there being no allegation that L & R Equipment, Inc. carried on any subsequent business, the filing of the Certificate of Dissolution was only a formality.

Because of the aforementioned findings of fact and conclusions of law, it is ordered that the claim of the Department of Taxation and Finance be allowed to the extent that it conforms to the stipulation entered into by the parties and is denied in all other respects.