**NEW YORK CITY TRANSIT AUTHORITY, Petitioner,**

v.

**UNITED STATES of America and Interstate Commerce Commission, Respondents.**

**No. 462, Docket 87–4109.**

United States Court of Appeals, Second Circuit.

Argued Oct. 21, 1987.

Decided Dec. 4, 1987.

Kenneth Howard Schiffrin, Asst. Gen. Counsel, Brooklyn, N.Y. (Albert C. Cosenza, of counsel), for petitioner.

Dennis J. Starks, I.C.C., Washington, D.C. (Robert S. Burk, Gen. Counsel, Craig M. Keats, Deputy Associate Gen. Counsel, of counsel), for respondents.

Before OAKES, CARDAMONE and MAHONEY, Circuit Judges.

OAKES, Circuit Judge:

This case involves the relationship between the licensing and commercial zone provisions of the Motor Carrier Act of 1935, Pub.L. No. 74–255, 49 Stat. 543 (now codified as amended in scattered sections of 49 U.S.C.). The New York City Transit Authority ("NYCTA"), a public benefit corporation, functions as a common carrier in the boroughs of New York. In order to provide speedier service between Staten Island and Manhattan, NYCTA rerouted several express buses between these points through New Jersey. Before using the new routes, NYCTA informed the Interstate Commerce Commission ("ICC") of its plans, but received no response. The New York City Board of Estimate approved the routes, and the New Jersey Department of Transportation ruled upon application that NYCTA's use of New Jersey roadways was not subject to regulation by that state.

Seven months after NYCTA began using its new routes, Eagle Bus, Inc. ("Eagle"), filed a complaint which alleged that NYCTA was providing interstate passenger service without appropriate ICC authority. In response, NYCTA contended that it did not need ICC authority because the service was subject to the commercial zone exemption of 49 U.S.C. § 10526(b)(1) (1982).[1]

The ICC issued its decision on July 30, 1987, holding that NYCTA's Staten Island–New Jersey–Manhattan bus routes came under the ICC's jurisdiction and were not within the commercial zone exemption. A cease and desist order was issued by the ICC but was stayed by this court pending judicial review. We now deny the petition for review.

Even though NYCTA's bus service appears to have wholly intrastate consequences and, indeed, serves wholly intracity interests, it plainly falls within the ICC's jurisdiction unless exempted. Title 49, section 10521(a)(1)(B) (1982),[2] expressly

---

1. *49 U.S.C. § 10526(b)(1) provides:*

(b) Except to the extent the Commission finds it necessary to exercise jurisdiction to carry out the transportation policy of section 10101 of this title, the Commission does not have jurisdiction under this subchapter over—

(1) transportation provided entirely in a municipality, in contiguous municipalities, or in a zone that is adjacent to, and commercially a part of, the municipality or municipalities, except—

(A) when the transportation is under common control, management, or arrangement for a continuous carriage or shipment to or from a place outside the municipality, municipalities, or zone; or

(B) that in transporting passengers over a route between a place in a State and a place in another State, or between a place in a State and another place in the same State through another State, the transportation is exempt from the jurisdiction of the Commission only if the motor carrier operating the motor vehicle also is lawfully providing intrastate transportation of passengers over the entire route under the laws of each State through which the route runs[.]

2. *49 U.S.C. § 10521(a)(1)(B) provides:*

(a) Subject to this chapter and other law, the Interstate Commerce Commission has jurisdiction over transportation by motor carrier and the procurement of that transportation, except by a freight forwarder (other than a household goods freight forwarder), to the extent that passengers, property, or both, are transported by motor carrier—

(1) between a place in—

.     .     .     .     .

(B) a State and another place in the same State through another State ...

grants the ICC power to regulate motor carrier service to the extent that passengers are transported "(1) between a place in— ... (B) a State and another place in the same State through another State." *See also Central Greyhound Lines, Inc. v. Mealey,* 334 U.S. 653, 655–56, 661, 68 S.Ct. 1260, 1262, 1265, 92 L.Ed. 1633 (1948); *accord Cornell Steamboat Co. v. United States,* 321 U.S. 634, 640, 64 S.Ct. 768, 771–72, 88 L.Ed. 978 (1944) (ICC regulating water carriers between two ports of single state where transportation touches another state); *Resort Bus Lines, Inc. v. ICC,* 264 F.Supp. 742 (S.D.N.Y.1967) (three-judge panel) (ICC regulated bus service between Poughkeepsie, New York, and New York City via New Jersey) (Kaufman, J.). Where, however, that transportation is provided entirely in a zone adjacent to, and commercially a part of, a single municipality or contiguous municipalities, the statute exempts certain common carrier service from ICC regulation. *See* 49 U.S.C. § 10526(b)(1).

■ NYCTA correctly argues that in creating the commercial zone exception to ICC jurisdiction, Congress intended to leave common carrier routes of purely local concern to local regulation. NYCTA, however, erroneously concludes that because its express service shuttles passengers between two points within a single city, it is the type of common carrier service Congress sought to exempt from federal regulation.

NYCTA fails to recognize that Congress had a second purpose in creating the commercial zone exemption, that is, assuring that a passenger carrier would be subject to the regulation of *some* authority— whether federal or local—over the entire length of its route. To avoid duplication Congress concluded that where a particular route fell technically within the ICC's purview, yet was both purely local in character and fully regulated by local authorities, exemption from federal regulation was both appropriate and efficient. *See* 79 Cong.Rec. 5651 (Apr. 15, 1935) (remarks of Senator Wheeler introducing the bill that later became the Motor Carrier Act).

Thus, the commercial zone exception in 49 U.S.C. § 10526(b)(1)(B) requires that the motor carrier provide "intrastate transportation of passengers over the entire route under the laws of each State through which the route runs."

Despite protestations to the contrary, NYCTA is not operating "under the laws of each State through which the route runs." In order to be subject to the regulatory authority of a state, a passenger carrier must affect some interest within that state. Here, NYCTA conducts no intrastate operations in New Jersey, as it neither picks up nor discharges passengers there. Thus, New Jersey is powerless to regulate NYCTA's "closed-door" passage over its highways, as indeed its Department of Transportation held upon NYCTA's application for operating authority. The resulting regulatory gap makes NYCTA ineligible for the commercial zone exemption, and leaves its Staten Island–New Jersey–Manhattan express routes squarely within the jurisdiction of the ICC. NYCTA must either apply for an ICC license or change its bus routes.

■ NYCTA attempts, based upon the legislative history of section 331 of the newly-enacted Surface Transportation and Uniform Relocation Assistance Act of 1987 ("STURA") (amending 49 U.S.C. § 10922(c)(2)), to read into the ICC's jurisdictional mandate a requirement that interstate service be "actual" and "substantial." *See* H.R.Conf.Rep. No. 27, 100th Cong., 1st Sess. 242 (1987), *reprinted in* 1987 U.S. Code Cong. & Admin.News 66, 225–26. The thrust of the new section 10922(c)(2) enacted in STURA is to clarify the limits on the ICC's authority to grant *intra*state licenses where a common carrier seeks to evade local regulation by operating over a technically interstate route. *Cf. Funbus Systems, Inc. v. California Pub. Utils. Comm'n,* 801 F.2d 1120, 1125–29 (9th Cir. 1986) (construing former section 10922(c)(2)). Thus, the argument is inapposite to NYCTA's situation.

In conclusion we note our concern that large numbers of commuters not be seriously inconvenienced by the interruption of

this bus service. That concern was somewhat lessened by the ICC's statement to this court that it knew of no reason why NYCTA would not be granted, first, 30-day emergency temporary authority (subject to an extension of up to 90 days) and later a 270-day temporary operating authority pending the application process. Such authorities are, according to the ICC, "routinely" granted under 49 U.S.C. § 10928(b)(1), (c)(1) on a showing of "an immediate need for the service, and a willingness to comply with the Department of Transportation's safety regulations." In reliance on the ICC's representations, we lift our stay of the Commission's order and deny NYCTA's petition for review.