In the Matter of Fonda, Johnstown and Gloversville Railroad Company, Petitioner, against State Tax Commission et al., Respondents.

Third Department, January 31, 1957.

*Lydon F. Maider* and *Hugh H. Smith* for petitioner.

*Jacob K. Javits, Attorney-General (Edward Siegfried* and *James O. Moore, Jr.,* of counsel), for respondents.

Coon, J. Petitioner is a New York corporation which operates a steam railroad wholly within this State between Fonda and Broadalbin, New York. During all of the time between July 1, 1951 and February 28, 1953 (the period involved in this controversy) and prior thereto, petitioner also operated omnibus lines wholly within this State, using 45 omnibuses, each having a seating capacity of more than 7 passengers.

Respondent (hereinafter called "Tax Commission") has imposed a 2% tax against petitioner for the above period upon the gross operating income of its intrastate omnibus operations under section 186-a of the Tax Law. The tax was paid under protest, and, upon application for a refund, a hearing was held and the Tax Commission made a determination denying the refund. This proceeding is to review that determination. The facts at the hearing were undisputed, and only a statutory construction question is presented.

Section 186-a of the Tax Law was enacted in 1937 (L. 1937, ch. 321) and imposed a tax on the utilities therein defined of 2% on the gross income ( if the utility is subject to the supervision of the State Dept. of Public Service) or on the gross operating income (if not subject to such supervision). Steam railroads were excluded from the definition of "utility" and were therefore not subject to the tax.

The Tax Commission concedes that petitioner was not subject to the tax imposed by section 186-a prior to July 1, 1951 although its operations, including the omnibus lines, were substantially

the same as thereafter, because of its status as an exempt steam railroad. The entire operation was treated as one unit, exempt from the tax, and petitioner contends that this same situation should prevail during the period involved here, despite some changes in the law.

Now two amendments to section 186-a enter the picture. An amendment in 1941 (L. 1941, ch. 137) imposed the tax upon activities defined as a utility "regardless of whether such activities are the main business of such person or are only incidental thereto." Then in 1951, leaving the above amendment intact, the Legislature further amended section 186-a (L. 1951, ch. 601), by creating a new, separate and distinct utility consisting of the operation of " one or more omnibuses having a seating capacity of more than seven passengers." We then have subdivision 2 of section 186-a, effective July 1, 1951, reading, insofar as pertinent, as follows: " 2. As used in this section, (a) the word ' utility ' includes every person subject to the supervision of the state department of public service, except persons engaged in the business of operating or leasing sleeping and parlor railroad cars or of operating railroads other than street surface, rapid transit, subway and elevated railroads, and also includes every person (whether or not such person is subject to such supervision) engaged in the business of operating one or more omnibuses having a seating capacity of more than seven passengers * * * regardless of whether such activities are the main business of such person or are only incidental thereto, or of whether use is made of the public streets ".

The real question presented is whether under that statutory language the intrastate omnibus operations of petitioner constitute a separate taxable " utility " irrespective of the exemption from the tax of its railroad operation.

The Tax Commission argues that as the statute read during the period in question, with the two amendments mentioned included, it was authorized to treat the omnibus operations of petitioner as an entirely separate utility and treat the two operations of petitioner as two separate and distinct activities, one taxable and one not. By the same theory of separation, the omnibus operation was regarded as falling within the category subject to taxation on " gross operating income."

Petitioner argues that, in the light of the historical background of the two amendments, they were enacted for a specific purpose and that the Legislature did not intend to change petitioner's complete exemption. However, the legislative language so clearly and unambiguously covers petitioner's situation and imposes the tax on one branch of its business, that we need not

and may not resort to other means of interpretation. (*Meltzer v. Koenigsberg,* 302 N. Y. 523.)

It may well be that the 1941 amendment was prompted by a Court of Appeals decision that submetering of electricity by an apartment house owner was not subject to the tax because it was incidental to the main business of operating an apartment house. (See *Matter of 339 Central Park West, Inc., v. Graves,* 260 App. Div. 265, affd. 284 N. Y. 691, and *Matter of Lacidem Realty Corp* v. *Graves,* 288 N. Y. 354.) It may be that the 1951 amendment bore some relation to a holding that the State could tax the intrastate business of an interstate omnibus line. (See *Greyhound Lines* v. *Mealey,* 334 U. S. 653.) Nevertheless, that which prompts legislative action does not limit it. Once legislative attention is directed to a subject, the field subsequently included must be determined by the language of the act as it is finally enacted into law.

If we were to indulge in speculation as to the purposes of legislation, it is quite probable that the reason steam railroads were exempted from the tax in the first place was that they were already adequately taxed by other taxes upon their self-owned and maintained road beds, stations and other facilities. By the same token it is quite probable that the principal reason for expressly making omnibus lines subject to the tax was their use of publicly constructed and maintained highways for profit.

If petitioner's argument were carried to its logical conclusion it would be theoretically possible, to use an extreme example, for a corporation to operate a vast system of omnibus lines covering every city in the State and escape the tax on omnibus lines because it also owned a small steam railroad.

We think the Tax Commission was correct in its interpretation of the law since 1951, and that it was not only authorized but was mandated to impose the tax in question. If the Legislature did not intend to include petitioner's omnibus operations, it has had ample opportunity to change its broad language since this controversy arose. It still may do so, and petitioner's remedy, if it is being wrongfully taxed, is by legislative action rather than by strained judicial interpretation.

There are many collateral ramifications to petitioner's argument which we have carefully considered but deem unnecessary to discuss here.

The determination should be confirmed.

HALPERN, J. (dissenting). The petitioner is a steam railroad company which, in addition to its other activities, operates omnibus lines. The question is whether it is subject to tax under section 186-a of the Tax Law upon the gross operating income

of its omnibus lines from July 1, 1951 to February 28, 1953.

Section 186-a of the Tax Law, as originally enacted by chapter 321 of the Laws of 1937, read in part as follows: "1. * * * a tax equal to two per centum of its gross income * * * is hereby imposed upon every utility doing business in this state which is subject to the supervision of the state department of public service, and a tax equal to two per centum of its gross operating income is hereby imposed for the same period upon every other utility doing business in this state. * * * 2. As used in this section, (a) the word ' utility ' includes every person subject to the supervision of either division of the state department of public service, except persons engaged in the business of operating or leasing sleeping and parlor railroad cars or of operating railroads other than street surface, rapid transit, subway and elevated railroads, and also includes every person (whether or not such person is subject to such supervision) who shall engage in the business of selling gas, electricity, steam, water, refrigeration, telephony or telegraphy, delivered through mains, pipes or wires, or of furnishing gas, electric, steam, water, refrigerator, telephone or telegraph service, by means of mains, pipes, or wires ".

Shortly after the enactment of the statute, the State Tax Commission promulgated regulations with respect to the utility tax, under the authority of section 171 of the Tax Law (N. Y. Off. Comp. of Codes, Rules and Regulations, pp. 1286-1287).

The regulations read in part as follows: " ' Utility,' as used in the law is given a broader meaning than the word usually implies. Those subject to the tax are divided into two classes: a. In the first class is ' every utility doing business in this state which is subject to the supervision of the state department of public service,' * * * b. In the second class, is ' every other utility doing business in this state ' " i.e., any person or company engaged in the sale or rendition of one of the enumerated types of utility service, which was not subject to the supervision of the Department of Public Service.

As to the first class of utilities, the tax imposed was 2% of the gross income, which was defined as income from all sources. As to the second class, the tax imposed was 2% of the gross operating income, which was defined as including only income received from the sale or rendition of the enumerated services.

As appears from the text of the statute quoted above, the statute excepts from the utilities of the first class subjected to the tax " persons engaged in the business * * * of operating railroads other than street surface, rapid transit, subway and

elevated railroads ''. This exception has remained unchanged up to the present time. No legislative history as to the reason for this exception is available but it may be presumed that the Legislature took account of the financial condition of the steam railroads, in deciding that they ought not to be subjected to the tax.

The types of public utilities included in the first class were not enumerated in the statute. It was apparently felt that the fact of supervision by the Public Service Commission sufficiently identified the companies intended to be covered. Thus, for example, the term '' omnibus line '' did not appear in the tax statute but nevertheless all companies operating omnibus lines (except railroad companies which were exempted by virtue of the special exception) were subject to the tax, from the time of its institution in 1937.

All the operations of the petitioner came within the first class, i.e., operations subject to the jurisdiction of the Public Service Commission. Both the railroad lines and the omnibus lines operated by the petitioner were subject to the jurisdiction of the Public Service Commission in 1937 when the tax statute was adopted and they have continued to be so subject ever since.

It will be noted that the statutory exception of steam railroads, in terms, exempted them completely from the tax. The exemption applied not only to the railroad operations of steam railroad companies but also to any omnibus lines which they might happen to operate. That this was the correct construction of the statute was settled within a few years after its enactment. After a full hearing, the State Tax Commission decided, in a proceeding relating to the years 1937 to 1940, that the petitioner was not liable for taxes upon the income of its omnibus lines, for the reason that the statutory exception applied to all the operations of the petitioner. The Attorney-General concurred in this construction. It has been the settled administrative construction of the statutory exception of steam railroad companies, ever since.

The question then arises as to whether the 1941 and 1951 amendments have altered the situation. The answer to this question requires a more detailed examination of the statute and the accompanying regulations.

The types of utilities falling within the second class, i.e., those which were not subject to the supervision of the Public Service Commission, were enumerated in the statute in detail. The second class included persons engaged '' in the business of selling gas, electricity, steam, water, refrigeration, telephony or

telegraphy, delivered through mains, pipes or wires, or of furnishing gas, electric, steam, water, refrigerator, telephone or telegraph service, by means of mains, pipes or wires ''.

Prior to 1941, a question had arisen as to the liability of landlords and others whose primary business was not one of the businesses enumerated in the second class but who incidentally rendered utility service of one of the types enumerated. It had been held that landlords, so-called submeterers, were not liable for a utility tax upon electricity sold by them to their tenants (*Matter of 339 Central Park West, Inc.* v. *Graves,* 260 App. Div. 265, affd. 284 N. Y. 691). The statute was amended in 1941 to deal with this problem. By chapter 137 of the Laws of 1941, there was added to the enumeration of utility services in the second class, the words '' regardless of whether such activities are the main business of such person or are only incidental thereto, or whether use is made of the public streets ''. This amendment was designed to overcome the decision in the submetering case. After the 1941 amendment, it was held that the receipts of submeterers were subject to the tax (*Matter of Lacidem Realty Corp.* v. *Graves,* 288 N. Y. 354).

The 1941 amendment obviously has no bearing upon our problem. As the State Tax Commission conceded, the adoption of the 1941 amendment had no effect upon the nonliability of the petitioner and the commission made no claim against the petitioner for taxes during the 10-year period from 1941 to 1951.

This brings us to the amendment adopted in 1951 (L. 1951, ch. 601) which has given rise to the present controversy. The amendment added to the enumeration of persons subject to the tax in the second class, persons '' engaged in the business of operating one or more omnibuses having a seating capacity of more than seven passengers ''. This was the statutory language which had long been used to describe omnibus operations which were not subject to general regulation by the Public Service Commission but which were subject only to inspection as to safety (Public Service Law, § 61, subd. 14).

The enumeration of persons in the second class, in the statute as originally enacted, did not include persons who operated omnibuses in a manner or under circumstances not subjecting them to the supervision of the Public Service Commission. The operators of '' omnibus lines '', subject to the supervision of the Public Service Commission, were, as has been noted above, included in the first class. The term '' omnibus lines '' is defined in subdivision 28 of section 2 of the Public Service Law as meaning '' a motor vehicle or motor vehicles * * * operated for the use and convenience of the public, usually along the

same route or between stated termini, or on a fixed or stated schedule, carrying passengers for hire ''. Persons operating omnibuses, solely on a contract basis, not for the use of the public, e.g., for the transportation of school children or the transportation of charter parties, were not made subject to the utility tax. Neither were the operators of interstate omnibus lines subject to the utility tax. They did not fall within the first class because they were not subject to the general jurisdiction of the Public Service Commission and they were not included in any of the types of businesses enumerated in the second class.

The purpose of the 1951 amendment, as is clear upon the face of the amendment when read in context and as is set forth in the memorandum submitted by the State Tax Commission in sponsoring the amendment in the Legislature (Legislative Annual, 1951, pp. 296–297), was to include in the second class, the two types of omnibus operators who had not theretofore been subject to the tax: (1) operators of omnibuses having a seating capacity of more than 7 passengers within the State who were not subject to the supervision of the Public Service Commission because they were not common carriers, i.e., not operators of omnibus lines as defined in the Public Service Law; (2) operators of omnibuses in interstate commerce who were not subject to the jurisdiction of the Public Service Commission, except as to matters of safety, because of the interstate character of their operations.

(1) As has been pointed out above, the operators of school buses and contract or charter buses, which did not operate for public use along regular routes or on a regular schedule, had not been covered by the tax. The 1951 amendment subjected them to the tax for the first time. By subsequent amendments, the operators of school buses under contract with school districts and educational corporations were excluded from the coverage of the statute (L. 1952, ch. 808; L. 1955, ch. 181) but all other contract carriers by bus continued to be covered.

(2) The 1951 amendment also subjected interstate omnibus operations to the tax for the first time. As explained in the State Tax Department's memorandum (Legislative Annual, 1951, pp. 296–297), section 186-a had been interpreted by the Attorney-General as not applying to interstate bus transportation. This view had been incorporated in the regulations promulgated by the State Tax Commission (N. Y. Off. Comp. of Codes, Rules and Regulations, p. 1290). However, in *Greyhound Lines, Inc.* v. *Mealey* (334 U. S. 653) the United States Supreme Court had held that the State could impose a tax upon the intrastate portion of interstate omnibus trips. The 1951 amendment

was designed primarily to take advantage of this holding. The amendment imposed a tax upon interstate bus transportation, subject, however, to the allocation of revenues upon the basis of mileage within and without the State.

The new language inserted by the 1951 amendment did not have anything to do with *intrastate omnibus lines*. Companies operating such lines had always been subject to the utility tax as companies in the first class, i.e., companies within the jurisdiction of the Public Service Commission. Of course, if the operator of the omnibus line was a steam railroad company, it was exempt from the tax under the express exception in the statute but this did not alter the fact that the company was in the first class and was not subject to a tax imposed in terms only on companies in the second class.

The 1951 amendment made no change in the definition of utilities in the first class and made no change in the exception thereto, exempting the operations of steam railroads from the tax. No exception was interposed within the exception so as to make omnibus lines operated by steam railroad companies subject to the tax while leaving the railroad operations exempt from the tax. As is clear on its face, the amendment made no change in the status of the petitioner.

The State Tax Commissioner amended its regulations to conform to the 1951 amendment (N. Y. Off. Comp. of Codes, Rules and Regulations [7th Cum. Supp.], pp. 635–636, 640–641). The amendments reflected the addition of the two types of omnibus operations subjected to the tax, discussed above. There is no suggestion in the amended regulations that the omnibus line operations of steam railroad companies were in any way affected by the 1951 amendment.

In the amended regulations, the paragraph defining utilities in the first class and restating the statutory exception thereto, remained unchanged. New matter was inserted in the paragraph defining utilities of the second class to reflect the inclusion of persons engaged in the business of operating omnibuses not subject to the jurisdiction of the Public Service Commission (p. 635). The discussion in the regulations of receipts from services rendered in interstate commerce was completely revised (pp. 640–641).

Notwithstanding the clear legislative history and the equally clear regulations adopted by the State Tax Commission itself, the State Tax Commission now asserts that the 1951 amendment had the effect of subjecting steam railroads to a tax upon their omnibus line operations.

Under the interpretation now put forward by the State Tax Commission, while all the operations of the petitioner are to continue to be exempted from tax under the first category of companies under the jurisdiction of the Public Service Commission, the omnibus line operations of the petitioner are to be subjected to tax under the second category, which applies only to companies which are not under the jurisdiction of the Public Service Commission. The State Tax Commission thus becomes involved in self-contradiction. The fact is, of course, that the petitioner is, and always has been, subject to the jurisdiction of the Public Service Commission as to all its operations, including its omnibus operations.

A further contradiction appears in the State Tax Commission's position, with respect to the base of the tax to be imposed upon the petitioner. As has been pointed out above, the tax upon public utility companies subject to the jurisdiction of the Public Service Commission is 2% of total gross income; the tax upon "every other utility" is 2% of gross operating income. Under the State Tax Commission's interpretation, the petitioner is to pay a tax of 2% of its operating income, not 2% of its total gross income. The State Tax Commission is thus forced to rewrite the taxing provisions of the statute in order to sustain its position. It seeks to apply to the petitioner (which is concededly subject to the jurisdiction of the Public Service Commission) a tax upon gross operating income, which, under the statutory definition, applies only to the income of companies not subject to the supervision of the Public Service Commission.

If the Legislature had intended to terminate the exemption of the omnibus operations of steam railroad companies, it could readily have adopted an amendment to that effect. No such amendment was proposed by the State Tax Commission and no such amendment was adopted by the State Legislature.

It is suggested in the majority opinion that, even though the 1951 amendment may not have been aimed at the petitioner, the petitioner was nevertheless hit by it. There is nothing in the language of the 1951 amendment, when read in context, to support this view. There are no "invisible radiations" from the language of the 1951 amendment which affect the scope of the exemption of steam railroads (cf. HOLMES, J., in *Missouri* v. *Holland,* 252 U. S. 416, 419). Under the settled administrative construction, the exemption of steam railroad companies embraced all the operations of such companies including their omnibus operations. That settled construction was in no way affected by the 1951 amendment. As has been pointed out, the

amendment dealt only with companies in the second class, which were not subject to the jurisdiction of the Public Service Commission. It could not affect the scope of the exemption of steam railroad companies as companies in the first class.

It may be argued that the words appearing in the statute in parentheses, preceding the enumeration of persons of the second class, " whether or not such person is subject to such supervision," are sufficient to pick up a company which was exempted from tax under the first class and to subject it to tax under the second class. It will readily be seen on reflection that this is an unreasonable construction of the statute. It is not reasonable to attribute to the Legislature an intention to subject a company of the first class which it had expressly exempted from tax, to the tax imposed only upon companies in the second class.

It is clear from the scheme of the statute that the first and second classes were intended to be separate classes without any overlapping or duplication; the first class included all companies that were subject to the jurisdiction of the Public Service Commission and the second class covered companies engaged in the business of selling the enumerated services, *even though not* subject to such supervision. It is clear in the light of the scheme of the statute that the words " whether or not " in context mean " even though not ". If the words " whether or not " were construed to include both companies which were subject to the jurisdiction of the commission and those which were not, there would be a duplication between the second class and the first class, because a public utility company subject to the jurisdiction of the commission selling one of the enumerated services would then fall within the second class as well as the first. Only by construing the words as meaning " even though not " can duplication be avoided. Furthermore, as has been pointed out above, if the words were read as imposing a tax in the second class upon companies which by definition were in the first class, there would be an irreconcilable conflict as to the tax base to be used in determining the company's tax.

It will be noted that subdivision 1 of the statute, in defining companies falling within the second class, uses the words " every other utility doing business in this state ". This follows the definition of the first class as embracing companies " subject to the supervision of the state department of public service ". The words " every other utility " exclude from the second class any company which is subject to the supervision of the Public Service Commission. In order to be consistent with this provision, the words " whether or not " appearing in the definition of the second class in subdivision 2 of the statute must obviously

be read to mean " even though not ". It will be noted that, in the regulations promulgated by the State Tax Commission, the " whether or not " phrase is omitted entirely in defining the second class and the phrase " every other utility " is used as the sole basis of the definition.

I therefore conclude that no tax was payable by the petitioner upon its omnibus operations. The determination of the State Tax Commission should be annulled.

BERGAN and GIBSON, JJ., concur with COON, J.; HALPERN, J., dissents in a memorandum in which FOSTER, P. J., concurs.

Determination confirmed, with $50 costs.