# SEMINOLE ELECTRIC COOPERATIVE, INC. v THE FLORIDA DEPARTMENT OF REVENUE, et al.

## Case No. 90-17722

Thirteenth Judicial Circuit, Hillsborough County

March 22, 1991

## OPINION OF THE COURT

GUY W. SPICOLA, Circuit Judge.

### *FINAL DECLARATORY JUDGMENT*

THIS CAUSE came before the Court on Plaintiff's Motion for Summary Judgment heard on January 30, 1991 and February 13, 1991. The Court, having considered the parties' memoranda of law and oral argument, and having conducted its own research, hereby makes the following declaratory judgment.

### *FACTS*

Seminole Electric operates two coal-fired electric generating plants near Palatka, Florida. Coal used to operate the plants is purchased from mines located in Illinois and Kentucky. All shipments of coal originated in either Illinois or Kentucky and terminated in Florida.

Pursuant to transportation contracts between Seminole Electric and third-party coal transportation companies, coal is transported by barges down the Ohio and Mississippi Rivers to the Gulf of Mexico and through the intracoastal waterway to Port St. Joe, Florida.

The total marine mileage for coal transport is 1,346 miles. The total Florida mileage is 167 miles. The Florida portion of the total mileage is 12.40713%. Beginning July 1, 1987, the State of Florida, through its Department of Revenue, imposed a service sales tax ("tax") on interstate transportation services pursuant to Florida Statutes § 212.059 (1987). In accordance with the statute, a tax of 5% was assessed on interstate transportation services and computed on one-half of the service price for coal transportation charged to Seminole Electric under contracts with coal transportation companies.

From July 1987 through December 1987, Seminole Electric paid $12,264,137.20 in coal transportation charges. Of that total amount of services, 50% or $6,132,068.60 was subject to the tax pursuant to the statute. The total tax paid by Seminole Electric for the six-month period the tax was imposed by the Department of Revenue was $306,603.43. The following table sets forth a mileage comparison and the computation of the service tax involved in this case.

### SERVICE TAX ON WATER TRANSPORTATION SERVICES JULY THROUGH DECEMBER 1987

| | | | |
|---|---|---|---|
| Total Florida Mileage | 167 | | |
| Total Interstate Mileage | 1,346 | | |
| Florida portion | 12.40713% | | |

| Total Transportation Charges — July through December, 1987 | (1) 50% of charges | (2) 12.40713% of charges | Difference (1) - (2) |
|---|---|---|---|
| $112,264,137.20 | 6,132,068.60 | 1,521,627.45 | 4,610,441.15 |
| Service Tax Rate | x 5% | x 5% | x 5% |
| SERVICE TAX | $306,603.43 | $76,081.37 | $230,522.06 |

*Rate of Tax on Florida Transportation Services in this case.*

| | |
|---|---|
| Transportation Services allocated to Florida mileage | 1,521,627.45 |
| Service Tax assessed and paid | 306,603.43 |
| | 306,603.43 |
| Service Tax divided by transportation services | 1,521,627.45 |
| Effective Rate of Tax (approximately) | 20% |

Seminole Electric seeks a refund of the taxes paid arguing that Florida State § 212.059(5) (1987) violates the Commerce Clause of Article I, Section 8 of the United States Constitution. This court has jurisdiction pursuant to Florida Statutes § 72.011.

## DISCUSSION

The issue before the court is whether Florida Statutes § 212.059(5) (1987) violates the Commerce Clause of the United States Constitution. In 1987, the Florida Legislature imposed a sales tax on interstate

transportation services by amending Chapter 212 of the Florida Statutes. The amended statute provided:

212.059 Sales and use tax on services.—It is hereby declared to be the legislative intent to levy an excise tax on the sale of services in this state as hereinafter provided. It is further declared to be the legislative intent to levy a complementary excise tax on the use of services in this state as hereinafter provided.

(1)(a) A tax is hereby imposed on the sale at retail of any service in this state at the rate of 5 percent of the sales price of the service. The tax shall be computed on each taxable sale of a service for the purpose of remitting the amount of tax due the state, and shall include each and every retail sale of a service.

. . . . . .

(5) Notwithstanding other provisions of this section to the contrary:

(a) Interstate and international transportation services shall be considered sold or used in this state to the extent that the sale price or cost price of the service is apportioned to this state pursuant to paragraph (b).

(b) The sales price of the sale of interstate or international transportation services, or the cost price of the use of interstate or international transportation services, shall be apportioned to the state as provided in this paragraph. There shall be included in the measure of the tax imposed by this part on the sale or use of interstate or international transportation service *one-half of the sales price or cost price of the Florida service provider if the point of origin of the transportation service is in Florida, and one-half of said price if the point of termination is in Florida* for the service transaction in question. For the purposes of this paragraph:

1. "Florida service provider" means the person providing transportation services in Florida regardless of the commercial domicile of such person; and

2. "Point of origin" and "point of termination" mean the physical locations at which the Florida service provider begins or ends movement of the property which is being transported, respectively.

(emphasis supplied)

The United States Supreme Court has established a four-pronged test to determine whether a state tax violates the Commerce Clause. A tax statute will be sustained against a Commerce Clause challenge if the tax 1) is applied to an activity with a substantial nexus to the taxing

state, 2) is fairly apportioned, 3) does not discriminate against interstate commerce, and 4) is fairly related to the services provided by the state. *Complete Auto Transit, Inc. v Brady,* 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977). The court must determine whether Florida Statutes § 212.059(5) satisfies the *Complete Auto Transit* test.

### 1. SUBSTANTIAL NEXUS

Both parties agree that there is a substantial nexus with the State of Florida for the state to tax the transportation services for which Seminole Electric contracted for the transportation of coal from Kentucky to its electric generation plants in Florida. The parties disagree, however, on the application of the remaining three prongs of the *Complete Auto Transit* test.

### 2. FAIR APPORTIONMENT

The second prong of the *Complete Auto Transit* test requires that the service tax be fairly apportioned to Florida services. The central purpose behind the apportionment requirement is to ensure that each state taxes only its fair share of an interstate transaction. *Goldberg v Sweet,* 488 U.S. 252, 109 S.Ct. 582, 102 L.Ed.2d 607 (1989). A tax is fairly apportioned under the second prong of the *Complete Auto Transit* test when the tax is found to be both internally and externally consistent. *Id.* at 261, 109 S.Ct. at 588, 102 L.Ed.2d at 616; *Container Corp. of America v Franchise Tax Bd.,* 463 U.S. 159, 169, 103 S.Ct. 2933, 2942, 77 L.Ed.2d 545, 556 (1983).

To be internally consistent, a tax must be structured so that if every state were to impose an identical tax, no multiple taxation would result. *Goldberg,* 488 U.S. at 261, 109 S.Ct. at 589, 102 L.Ed.2d at 617; *Container Corp.,* 463 U.S. at 169, 103 S.Ct. at 1942, 77 L.Ed.2d at 556. Seminole Electric admits that the statute passes the internally consistent test because there is no possibility of multiple taxation. Multiple taxation is impossible in this case since the tax is assessed by the state that is either the point of origin or the point of termination of the interstate transportation service. The tax is then only imposed on one-half of the cost of the transportation service. Thus, only two states can assess the tax and each can only impose the tax on half of the transportation service cost. Even if Seminole Electric paid a point of origin tax to Kentucky where the coal barges began their route to the power plant, and then paid a point of termination tax to Florida, there would be no multiple taxation since each state is only imposing a tax on one-half of the total transportation cost.

The Department of Revenue points out that any possibility of multiple taxation is cured by the credit provision of Florida Statutes

§ 212.06(7). The Defendants argue that Florida's tax is fairly apportioned since a credit is allowed for taxes paid to other states. While a credit provision will render an otherwise unfairly apportioned taxing scheme fairly apportioned, *D. H. Holes Co., Ltd. v McNamara,* 486 U.S. 24, 108 S.Ct. 1619, 100 L.Ed.2d 21 (1988), such provision is inapplicable in the present case. There is no possibility of multiple taxation under Florida Statutes § 212.059(5) since only two states may tax the interstate coal transportation services and each state taxes a separate event. As Seminole Electric correctly notes, where there is no possibility of multiple taxation, whether or not there is a credit available never comes into play.

Notwithstanding the statute's passing the internal consistency test, a tax is fairly apportioned only if it passes both the internal consistency test and the external consistency test. The "second and more difficult" component of fairness in an apportionment formula is external consistency. *Container Corp.,* 463 U.S. at 169, 103 S.Ct. at 2942, 77 L.Ed.2d at 556. The external consistency test asks whether the State of Florida has taxed only that portion of the revenues from the interstate activity which reasonably reflects the in-state component of the activity being taxed. *Goldberg,* 488 U.S. at 262, 109 S.Ct. at 589, 102 L.Ed.2d at 617. An apportionment formula will be struck down if the taxpayer can prove "by clear and cogent evidence that the income attributed to the State is in fact out of all appropriate proportions to the business transacted in that State." *Container Corp.,* 463 U.S. at 170, 103 S.Ct. at 2942, 77 L.Ed.2d at 556.

Seminole Electric argues that Florida Statutes § 212.059(5) fails the external consistency test because Florida taxes more than the actual number of miles of transportation services that occur within the state. They argue that assessing tax on one-half of the total value of the interstate transportation services, regardless of the number of miles, does not reasonably reflect the in-state component of the activity being taxed. The court agrees.

In *Central Greyhound Lines, Inc. v Mealey,* 334 U.S. 653, 68 S. Ct. 1260, 92 L.Ed. 1633 (1948), the State of New York attempted to tax the gross receipts of a bus transportation company when almost 43% of the mileage for the bus routes subject to tax were within New Jersey and Pennsylvania. The Supreme Court held that the tax violated the Commerce Clause because it was not fairly apportioned to the business done within the State of New York. The court stated:

> [E]ven if neither Pennsylvania nor New Jersey sought to tax their proportionate share of the revenue from this transportation, such

abstention would not justify the taxing by New York of the entire revenue. [citation]. By its very nature an unapportioned gross receipts tax makes interstate transportation bear more than "a fair share of the cost of the local government whose protection it enjoys." [citation]. *Id.* at 663, 68 S.Ct. at 1266, 92 L.Ed. at 1642.

Similarly, in the present case, Florida is attempting to tax one-half of the total cost of interstate transportation services when more than 87% of the total miles were traveled outside of Florida. It is clear that the Florida tax makes Seminole Electric bear more than its "fair share." Accordingly, the court finds that Florida Statutes § 212.059(5) is not fairly apportioned since it fails to take into account the in-state mileage of the coal barge.

The Defendants argue that use taxes need not be apportioned based upon a proportionate share of the activity underlying the sale. They rely on *Goldberg v Sweet* for the proposition that apportionment based on mileage is not necessary when such a formula would pose administrative burdens. In *Goldberg,* the Supreme Court ruled that an Illinois tax on interstate telecommunications did not violate the Commerce Clause since it satisfied all four prongs of the *Complete Auto Transit* test. The Illinois statute imposed a 5% tax on the gross charges of interstate telecommunications which originated or terminated in Illinois and which were charged to an Illinois service address. In analyzing the fair apportionment question, the Court stated that:

> In previous cases we have endorsed apportionment formulas based upon the number of miles a bus, train, or truck traveled within the taxing State. But those cases all dealt with the movement of large physical objects over identifiable routes, where it was practicable to keep track of the distance actually traveled within the taxing State. [citation]. This case, by contrast, involves the more intangible movement of electronic impulses through computerized networks. An apportionment formula based on mileage or some other geographic division of individual telephone calls would produce insurmountable administrative and technological barriers. [citation]. We thus find it significant that Illinois' method of taxation is a realistic legislative solution to the technology of the present-day telecommunications industry. 488 U.S. at 264, 109 S.Ct. at 590, 102 L.Ed.2d at 619.

The Defendants' reliance on *Goldberg* is misplaced. Whereas *Goldberg* involved the "intangible movement of electronic impulses," the present case deals with coal barges travelling down the Ohio and Mississippi Rivers. The present case is clearly one which deals with "the movement of large physical objects over identifiable routes."

*Goldberg* allowed a non-mileage apportionment formula because a mileage apportionment formula would have produced insurmountable administrative and technological barriers. In the present case, the Defendants have not shown any insurmountable administrative or technological barriers that would prevent the State of Florida from apportioning its interstate transportation service tax on the actual mileage within the State of Florida. As Seminole Electric points out, the Department of Revenue's auditor accepted the United States Coast Guard guide for waterway mileage along with a shipping company map in determining the number of miles the coal was transported in Florida waters. This shows that information was readily available concerning the actual mileage travelled in Florida; thus, there was no real administrative burden to the Department of Revenue.

Furthermore, Florida has other provisions in the sales tax law which allocates taxes based on intrastate mileage. *See e.g.* Florida Statutes § 212.08(4)(a)(2); § 212.08(8)(a); § 212.08(9)(a). Since these provisions require the allocation of the respective taxes based on the apportionment of intrastate mileage, it is clear that there is no administrative burden on the Department of Revenue which would prevent it from apportioning the interstate transportation service tax on the actual mileage within the State of Florida.

### 3. DISCRIMINATION AGAINST INTERSTATE COMMERCE

The third prong of the *Complete Auto Transit* test requires that the service tax not discriminate against interstate commerce. The third prong of the *Complete Auto Transit* test is closely related to the second prong. *See e.g. Container Corp.,* 463 U.S. at 171, 103 S.Ct. at 1943, 77 L.Ed.2d at 557 ("the anti-discrimination principle has not in practice required much in addition to the requirement of fair apportionment."); *Armco, Inc. v Hardesty,* 467 U.S. 638, 644, 104 S.Ct. 2620,—, 81 L.Ed.2d 540, 547 ("A tax that unfairly apportions income from other States is a form of discrimination against interstate commerce.").

Seminole Electric has demonstrated to the court how Florida's unapportioned service tax on interstate transportation services discriminates against interstate commerce. The table found on page three shows that the service tax assessed ($306,603.43) on the value of transportation services actually provided in Florida waters ($1,521,627.45) represents an effective rate of more than 20% on those Florida-related services. This rate of tax is more than four times the 5% tax Florida assessed on intrastate transportation services.

Seminole Electric relies on *American Trucking Associations, Inc. v*

**101**

*Scheiner,* 483 U.S. 266, 107 S.Ct. 2829, 97 L.Ed.2d 226 (1987), to show the discriminatory impact of state taxes on interstate commerce. In *Scheiner,* Pennsylvania assessed a flat axle tax on all trucks using Pennsylvania highways and also granted Pennsylvania vehicles a reduction in registration fees which effectively offset the axle tax for state-registered vehicles. Appellants argued that the taxes were discriminatory because they imposed a much heavier charge per mile of highway usage on out-of-state vehicles. The cost per mile of the flat taxes was about five times higher for out-of-state vehicles than for local vehicles since the Pennsylvania-based vehicles traveled about five times as many miles on Pennsylvania roads as did the out-of-state vehicles. The Court ruled that: "In practical effect, since they impose a cost per mile on appellants' trucks that is approximately five times as heavy as the cost per mile borne by local trucks, the taxes are plainly discriminatory." *Id.* at 286, 107 S.Ct. at 2841, 97 L.Ed.2d at 244.

Seminole Electric argues that, as with the flat tax in *Scheiner,* the service tax it paid to the Department of Revenue imposed a much heavier charge per mile for transportation services involving interstate transportation compared to the tax assessed against in-state transportation services. The Defendants discount *Scheiner* because it involved "flat" taxes, which the present case does not.

The Defendants rely on *Commonwealth Edison Co. v Montana,* 453 U.S. 609, 101 S.Ct. 2946, 69 L.Ed.2d 884 (1981). In *Commonwealth Edison,* Montana imposed a severance tax on coal at the same rate regardless of whether the final destination of the coal was local or interstate. The taxpayer claimed discrimination based on the fact that 90% of the Montana coal was shipped to other states. The Court rejected the taxpayer's claim and held that "there is no real discrimination in this case; the tax burden is borne according to the amount of coal consumed and not according to any distinction between in-state and out-of-state consumers." *Id.* at 619, 101 S.Ct. at 2954, 69 L.Ed.2d at 895.

The Defendants analogize *Commonwealth Edison* to the present case. They argue that since the service tax is a percentage of the value of the interstate transportation service, the tax burden is borne according to value of the transportation service and not according to any distinction between in-state and out-of-state consumers. This argument fails to realize that what is being taxed in *Commonwealth Edison* is *Montana* coal whereas what is being taxed in the present case is *interstate* transportation services. While there may be no distinction made between the use of coal for interstate and intrastate purposes in *Commonwealth Edison,* there is a distinction made between the num-

102

ber of miles traveled outside Florida and the number of miles traveled inside Florida in the present case. In the present case, as the percentage of out-of-state mileage increases, the effective rate of tax on a particular transportation service also increases.

While the service tax in the present case is not a strict flat tax like that in *Scheiner,* neither is it a severance tax like that in *Commonwealth Edison.* Notwithstanding the difference between a service tax and a flat tax, and contrary to Defendant's assertion, Florida's method of measuring the tax on interstate transportation services is more akin to that found impermissible in *Scheiner,* than that found permissible in *Commonwealth Edison.* Therefore, the court finds that Florida Statute § 212.059(5) impermissibly discriminates against interstate commerce and thus fails the third prong of the *Complete Auto Transit* test.

### 4. FAIR RELATIONSHIP TO THE BENEFITS PROVIDED BY FLORIDA

The fourth prong of the *Complete Auto Transit* test is closely related to the first prong. Under the first prong, the interstate business must have a substantial nexus with Florida before *any* tax may be levied on it. Beyond that threshold requirement, the fourth prong imposes the additional requirement that the *measure* of the tax be reasonably related to the extent of the taxpayer's presence within the state. *Commonwealth Edison,* at 626, 101 S.Ct. at 2958, 69 L.Ed.2d at 900; *Delta Air Lines, Inc. v Department of Revenue,* 455 So.2d 317, 323 (Fla. 1984).

In *Commonwealth Edison,* the Court found the Montana tax to be in proper proportion to the taxpayer's presence within the state since the tax was measured as a percentage of the value of the coal taken. Only when the measure of a tax bears no relationship to the taxpayer's presence or activities in a state may a court properly conclude under the fourth prong of the *Complete Auto Transit* test that the state is imposing an undue burden on interstate commerce. 453 U.S. at 629, 101 S.Ct. 2959, 69 L.Ed.2d at 902.

The United States Supreme Court applied these concepts to the flat tax charged by Pennsylvania and held the tax to be an unconstitutional burden on interstate commerce. *Scheiner,* 483 U.S. at 291, 107 S.Ct. at 2844, 97 L.Ed.2d at 247. The Court held such flat taxes unconstitutional because they did not vary directly with the miles traveled within the state. Similarly, the amount of Florida's service tax owed by Seminole Electric does not vary directly with the miles traveled within Florida since the tax is based on an arbitrary one-half of the services performed rather than on the number of miles traveled in Florida.

**103**

Therefore, Florida Statutes § 212.059(5) fails the fourth prong of the *Complete Auto Transit* test.

Having determined that Florida Statutes § 212.059(5) unconstitutionally violates the Commerce Clause, the next issue before the court becomes what effect the unconstitutional statute has on the taxpayer's obligation to pay its taxes. Florida Statutes § 212.0591(2) (1987) states that:

> If the sales price of the sale of a service or if the cost price of the use of a service cannot be included within the measure of the tax imposed by this part under the Constitution or laws of the United States, there shall be included in the measure of the tax imposed by this part on the sale of services that proportion of the sales price, or on the use of services that proportion of the cost price, that may lawfully be included under the laws and Constitution of the United States.

The Department of Revenue argues that section 212.0591(2) allows it to include in the measure of the tax the Florida portion of the interstate transportation service. In other words, the Department of Revenue should be allowed to assess $76,081.37 in taxes against Seminole Electric since that amount equals 5% of the Florida portion of the total transportation charges. (See Table on page three). The court agrees.

There is no dispute that the Florida Legislature had the authority to tax interstate transportation services since the appropriate nexus existed. Seminole Electric admits that there is a substantial nexus with the State of Florida for the Department of Revenue to tax the transportation services for the shipping of coal from Kentucky and Illinois to Florida. Seminole Electric further admits that it would be required to pay the service tax if it was fairly apportioned to the actual mileage traveled within Florida.

The United States Supreme Court noted in *Central Greyhound* that where a statute unconstitutionally levies an unapportioned gross receipts tax on a transaction, "the entire tax need not fall." 334 U.S. at 663, 68 S.Ct. at 1266, 92 L.Ed. at —. The Court stated: "There is no dispute as to feasibility in apportioning this tax. On the record before us the tax may constitutionally be sustained on the receipts from the transportation apportioned as to the mileage within the State." *Id.*

Similarly, in the present case, there is no dispute about the feasibility of apportioning the tax on transportation services. Seminole Electric provided, and the Department of Revenue accepted, the United States Coast Guard guide for interstate waterway mileage along with a

104

shipping map for determining the number of miles the coal was transported in Florida waters and the number of miles the coal was transported in other states' waters.

Furthermore, Florida Statutes § 212.0591(2) provides that if the sales price of a service cannot lawfully be included within the measure of tax imposed, then there shall be included that proportion of the sales price that may lawfully be included. In the present case, the sales price of interstate transportation services cannot lawfully be included within the measure of the tax because the tax violates the Commerce Clause. Therefore, there shall be included within the measure of the tax imposed, Florida's portion of the interstate transportation service. It is undisputed that Florida's portion of the interstate transportation service may lawfully be included within the measure of the tax imposed. The statutory language of section 212.0591(2) makes it clear that as between the imposition of the tax, including in its measure only that which is constitutionally permissible, or the granting of Seminole Electric an exemption from all tax, the imposition of the tax should prevail. *See e.g. Department of Revenue v Magazine Publishers of America, Inc.,* 565 So.2d 1304, 1310 (Fla. 1990) (legislative intent statute "makes it unmistakably clear that as between the imposition of the tax or the granting of an exemption, the tax shall prevail.").

Seminole Electric cites *Barndollar v Sunset Realty Corp.,* 379 So.2d 1278 (Fla. 1979), for the proposition that in order to sever an invalid provision of a statute, the court must be able to conclude that the Legislature would have been content to enact the law without the invalid provision. Seminole Electric argues that the legislative history of section 212.059(5) shows that the Legislature would not have adopted the statute without the unconstitutional assessment of the service tax. In Chapter 87-6, Laws of Florida (1987), the Florida Legislature sought to apportion the interstate transportation service tax based on the proportion of in-state miles to out-of-state miles. However, the Legislature revised Chapter 87-6 in Chapter 87-101 and altered the language of section 212.059(5) so that the tax was measured on one-half of the total cost of the transportation service, regardless of the number of miles traveled within Florida.

Seminole Electric argues that the Legislature sought to adopt an unconstitutional tax and would not have adopted a constitutional tax when it finally passed Florida Statutes § 212.059(5). Despite Plaintiff's contentions, the court finds that the Florida Legislature did not intend to pass an unconstitutional law when it finally promulgated Florida Statutes § 212.059(5). Had the Legislature known that Florida Statutes § 212.059(5) would be declared unconstitutional, it would not have

passed it. For whatever reasons, the Legislature decided to pass a tax statute affecting interstate commerce without apportioning the tax based on Florida mileage. Since the purpose of a tax statute is to raise money, it is clear that the Legislature would have preferred to pass section 212.059(5) with the constitutionally-approved apportionment formula than to have no statute in effect at all. To rule otherwise would render the remedy provision of section 212.0591(2) absolutely meaningless.

Therefore, pursuant to Florida Statutes § 212.0591(2) (1987), the court finds that the Department of Revenue should have assessed the interstate transportation service tax of 5% on that portion of the sales price which reflects the miles traveled in Florida. Five percent of the portion of the sales price ($1,521,627.45) which reflects the miles traveled in Florida equals $76,081.37. Since Seminole Electric paid $306,603.43 to the Department of Revenue, it is entitled to a refund of $230,522.06 (($306,603.43—$76,081.37).

Finally, Seminole Electric is entitled to post-judgment interest at a rate of 12% a year pursuant to Florida Statutes § 55.03(1). Neither this statute nor other applicable statutes exempt the Department of Revenue from the obligation to pay interest on judgments rendered against it. *See Roberts v Askew,* 260 So.2d 492 (Fla. 1972).

## CONCLUSION

Based on the preceding discussion of the law, the court finds that Florida Statutes § 212.059(5) (1987), as applied in this case, violates the Commerce Clause of Article I, Section 8 of the United States Constitution. The court further finds that pursuant to Florida Statutes § 212.0591(2) (1987), Seminole Electric is assessed a tax whose measure is imposed on the Florida portion of the interstate transportation service. It is therefore *ORDERED AND ADJUDGED* that Seminole Electric be entitled to a refund of $230,522.06, plus post-judgment interest of 12%.

DONE AND ORDERED in Tampa, Hillsborough County, Florida this 22nd day of March, 1991.